# Crawford *v.* Creswell.

*Bill in Equity by Beneficiaries for Investment of Trust Funds.*

1. *Conversion of testamentary trust funds into land ; jurisdiction of equity, and how exercised.*—Whether a court of equity can, under any circumstances, authorize the conversion of a testamentary trust fund, by purchasing a homestead for the life-tenant and his children, at their instance, when, by the terms of the bequest, the interest only is to be paid annually to him during his life, and then to his surviving wife for life, with remainder to his children, if any, and remainder over in default of children, is left an open question. If the court has such power, it can only be exercised upon the clearest allegations and proof that the interests of the remainder-men will not be prejudiced by the change; and the title of the property, its value, and the terms of the purchase, after being ascertained by the register under a reference, must be approved by the court.

2. *Trust estates, and trustees; jurisdiction of equity over; decree outside of pleadings and proof.*—Whatever power a court of equity may have over the estates of infants who have become wards of the court, and over trust estates which are being administered by the court, it has no power, *ex mero motu*, on a bill filed to authorize the purchase of a homestead for the beneficiaries with moneys belonging to a testamentary trust fund, to require the testamentary trustee to give bond for the fund, or to pay it into court, nor to order his removal in default of such bond or payment, when the bill makes no charges against him, and there is no proof of any misconduct on his part.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 14th October, 1873, by David Creswell and his six children, against James Crawford and Samuel L. Creswell as trustees, and against their children as legatees in remainder, of a certain trust fund created by the will of Robert Creswell, who died in 1850. The material limitations of the trust are stated in the opinion of the court. The object of the bill was to authorize the trustees, under the decree of the court, to invest a portion of the trust fund in the purchase of a homestead in Alabama for the complainants, who resided in Shreveport, Louisiana. The bill stated facts showing that it was desirable, if not necessary, that the complainants should return to Alabama; alleged that the proposed investment would be safe, and greatly to their benefit, and would be carrying into effect the

intention of the testator, "whose bounty was clearly intended for their support and maintenance;" and asked that the homestead, when purchased, be held subject to the same trusts and conditions as the original trust fund. The trustee answered the bill, admitting all its allegations as to the creation of the trust, its terms, the amount of the fund, &c.; and as to the propriety or necessity of the proposed investment, he said that this was matter of inference, or opinion, as to which he was advised that it was not necessary for him to answer, but submitted its decision to the judgment of the court, and was willing to abide by and perform its decree; and he demurred to the bill, for want of equity. Samuel L. Creswell also filed an answer, admitting all the allegations of the bill; and a formal answer was put in by the guardian *ad litem* of the infant defendants. No testimony was taken, but there was an agreement of record, signed by the solicitor of the complainants, the solicitor of the adult defendants, and the guardian *ad litem* of the infants, "that the investment prayed for in said bill would be safe, and to the interest of the complainants, not exceeding one-third of the whole trust fund, under the decree of the court."

On final hearing, "on pleadings and proof," the chancellor decreed—1st, "that it would be no infringement of the instrument creating the trust to use a portion of the trust fund in the purchase in Alabama of a homestead for the beneficiaries of said trust, in case said homestead be held and treated in all respects as a part of said trust fund;" 2d, "that a sum, not to exceed five thousand dollars, be used and applied to the purchase of such homestead in Alabama, by the trustee hereafter to be appointed to manage such trust funds, and that such trustee is hereby directed and authorized to invest a sum, not to exceed five thousand dollars, in the purchase of such a homestead for the beneficiaries, at such point as David Creswell may select;" 3d, "It being shown to the satisfaction of the court that James Crawford, the present trustee, is under no bond as such trustee, and moreover is in failing circumstances, and that the trust funds in his hands may be lost, it is ordered and decreed, that a lien for the amount of said trust funds be, and the same is hereby, declared to exist on all the property of the said James Crawford in the State of Alabama;" 4th, "that the said James Crawford be, and he is hereby required, within ten days from this date, to enter into bond with the usual penalty, with two good sureties, as such trustee, or, in default thereof, he will be removed from his trusteeship;" 5th, "that said James Crawford, trustee as aforesaid, do file with the register of this court, within fifteen days from the

date hereof, his account current and vouchers, showing what amount of the trust fund now remains in his hands, and that, in case he fails or refuses to enter into bond pursuant to paragraph four of this decree, he shall pay over to the register all of said trust fund for which he ought to be held responsible by this court;" 6th, that in the event of Crawford's failure to give bond, file his accounts and vouchers, and to pay over the funds to the register, "the register shall thereupon proceed to issue a rule *nisi* against the said Crawford, to appear before me at chambers, on the first Monday in March, 1874, to show cause why he should not be attached for contempt of the orders of this court in this decree contained;" and, 7th, that in the event of said Crawford's failure to give bond, to file his accounts and vouchers, and to pay the money into court, the register issue an execution against him for $15,085.84, the amount of the trust fund admitted by his answer to be in his hands.

Crawford appeals from this decree, and here assigns each part of it as error.

W. P. WEBB, and W. G. JONES, for appellant.—1. The bill was without equity, and the demurrer to it ought to have been sustained. The court had no power to make an investment contrary to the terms of the will.—2 Story's Equity, § 1276 ; Perry on Trusts, §§ 452, 456 ; *Lewis v. Cook & Mitchell*, 18 Ala. 334.

2. In the several orders personal to the trustee, the chancellor went outside of the allegations and proof, and beyond the prayer for relief.—2 Story's Equity Pl. § 257; 7 Porter, 154; 13 Ala. 681–93 ; 27 Ala. 196; 11 Ala. 336 ; *Hall v. Hall*, 43 Ala. 488.

W. COLEMAN, *contra.*—1. A court of equity has power to order money to be invested in real estate, or real estate to be converted into money ; and it will order the former more readily than the latter.—Perry on Trusts, § 450 ; *Ex parte Jewett*, 16 Ala. 409. Under the admitted facts, a proper case was made out for the interposition of the court. If the court erred in directing the investment, the trustee cannot be injured by it, nor can he complain of it, since the decree would amply protect him.—Perry on Trusts, § 928.

2. The chancellor had full power to make all orders deemed necessary for the preservation of the trust fund, if it was insecure, or in danger of being lost or wasted ; and the general prayer for relief would sustain such orders.

STONE, J.—Robert Creswell, having made and executed

[Crawford v. Creswell.]

his last will, died, and his will was admitted to probate
about the year 1850. By the fifth item of his will, he con-
stituted his son, Samuel L. Creswell, and James Crawford,
or the survivor of them, trustees of his son, David Cres-
well, and bequeathed to them, in trust, a pecuniary legacy,
which, in 1868, amounted to some fifteen thousand dollars.
James Crawford alone took upon himself the trust, and held
this fund. Among other duties, not necessary to be here no-
ticed, the trustees were, by the will, charged and instructed
as follows : " First, to pay my son, David Creswell, the in-
terest accruing on the above sums, on the first day of Janu-
ary of each and every year during his life ; secondly, if his
wife survive him, to pay said interest to her annually, on
the first day of January of each and every year of her life ;
thirdly, if my son, David Creswell, has a child or children
living at the time of his or his wife's death, then for the use
and benefit of said child or children ; fourthly, should my
son, David Creswell, have no such child or children, then,
and in that case, for the use and benefit of the children of
my son Samuel L. Creswell and my daughter Zernula W.
Crawford, share and share alike." Part of the money thus
placed in the hands of the trustees, for the purposes above
expressed, was the proceeds of real estate, which the will
had converted into personalty by directing its sale and con-
version into money.—Jarman on Wills, m. p. 524 ; 2 Story's
Equity, § 790, and note.

The bill in the present case seeks to have a part of the
*corpus* of said fund invested in real estate in Alabama, to be
a home for said David Creswell and his family. The com-
plainants are, David Creswell, and six others, alleged to be
his children, five of whom are described as infants, suing by
next friend. It is not claimed that the will gives any power
of re-conversion of any of the fund into land. It evidently
contains no such power. The sole ground on which the re-
lief is prayed is, that in the present impoverished and help-
less condition of the family, their comfort and interest, for
reasons stated in the bill, will be promoted by the conver-
sion. Some of the legatees in remainder over are minors,
who answer by their guardian *ad litem*. No testimony was
taken in the cause, and no reference ordered, to inquire and
report as to the expediency of such investment. The cause
was tried on pleadings, and agreement of counsel, " that the
investment prayed for in said bill would be safe, and to the
interest of complainants, not exceeding one-third of the
whole trust fund." This is signed by the solicitors of the
complainants and of the adult defendants, and by the guar-
dian *ad litem* of the infant defendants. The chancellor de-

creed, "that a sum not to exceed five thousand dollars be used and applied to the purchase of such homestead in Alabama, by the trustee hereafter to be appointed to manage said trust funds; and that such trustee is hereby directed and authorized to invest a sum, not to exceed five thousand dollars, in the purchase of such a home for the beneficiaries, at such point as David Creswell may select." No directions are given to guide the trustee in the purchase, save that it was to be at such point as David Creswell may select; and no instruction whether the investment should be in a plantation in the country, or in a residence in a city, town, or village. All this was left to David Creswell and the trustee; and it was not required that the selection or purchase should be reported to the court for its approval.

We have with earnest solicitude looked into the authorities, and we have found no adjudged case, or principle stated in any elementary work, which will authorize the relief prayed, under either the averments or proofs found in this record. The testator, by his will, converted land into money, placed it in trust, directed its preservation, and the payment of the interest to successive donees; and at the end of certain lives, the principal to go to the children of David Creswell, if any living, otherwise over. It is a cardinal rule, in the execution of wills, to carry into effect the express directions of the testator. Disregarding these, we change rather than interpret the will. In the case of *Davis, petitioner*, 14 Allen, 24, a much stronger case is made than we find in this record, why a change of investment should be made. The relief was denied. The court said: " So far as the intent of a testator can reasonably be effected, it should be done. He has exercised a right over his property, which the law has given him; and that right should be respected and maintained." And the court, commenting on the facts presented, said: "It is not apparent that the interest of the sons" [remainder-men] "would be promoted by a sale."

In *Ex parte Jewett*, 16 Ala. 409, Ch. J. DARGAN said: "Under peculiar circumstances, when it is manifestly for the interest of the infant, guardians may change the nature of their estate from personalty to realty, and from realty to personalty. He then quotes from Ch. Kent to the same effect, and adds: " Yet I confess I have not been able to find a case in any of the English books, where a sale of real estate of an infant has been ordered, on the ground alone that it would be for the interest of the infant, unless connected with the further reason of paying debts, or providing a maintenance for the infant. In this country, however, where the value of real estate is not fixed and stable, but

vacillates as much, or more, than the value of personal property, it would seem but reasonable that a court of equity should order a sale of the real estate of an infant, where it was made manifestly to appear that his interest demanded it. But then the facts which render the sale necessary should be alleged as well as proved, that the chancellor may clearly see that the interest of the infant would not be prejudiced, but, on the contrary, promoted by the sale."

Conceding, for the sake of the argument, that the Chancery Court has power to change a testamentary investment, such as this, into a homestead for the family, the present record falls very short of making a case for its exercise. The averments should show facts, not mere conclusions, why the interests in remainder will not be prejudiced, if they should not even go further, and show that they will be promoted by the change ; and these averments must be proved by testimony that is, at once, intelligent, reliable, and free from all imputation of bias. In selecting the homestead, watchful attention should be bestowed on the prospective, permanent value of the property, as the only means of properly guarding the interests of those in remainder ; and the title should be carefully examined, by one capable of making the examination ; and all these questions, with full descriptive details, should be reported to the court by the register. General power to purchase should not be conferred : only a defined and special purchase allowed and sanctioned by the court, after a full understanding and approval by the court, of the property, the title, and the terms of purchase.

In what we have said above, we do not mean to affirm that the chancellor, under any circumstances, can authorize the conversion prayed in the bill before us. We leave that question open.—See 2 Story's Equity, §§ 791, and 1276 ; 1 Perry on Trusts, §§ 452, 448 ; *Evans v. Iglehart,* 5 Gill & J. 171 ; *In matter of Heaton,* 21 N. J. 221 ; *Rogers v. Dill,* 6 Hill, 415 ; *Banister v. McKenzie,* 6 Mumf. 447 ; Leigh & Dalzell on Conversion, m. p. 167 ; 1 Jar. Wills, m. p. 528.

2. The Court of Chancery is, to some extent, the guardian of infants, and of other persons not *sui juris.* To justify its interposition, however, some proceedings must be had, bringing the question before the court. On a bill filed as this was, and making no charges against the fidelity or solvency of the trustee, the court has, *ex mero motu,* no authority to require a bond of the trustee, or to make orders, present or prospective, bearing on the question of his removal. If the infant had become a ward of the court, or, by other appropriate proceedings, the trust had been removed into

the Chancery Court, and was being there administered, the rule might be different.—See *McCullough v. Sommerville*, 8 Leigh, 415 ; *Duke of Beaufort v. Berty*, Pr. Wms. 704 ; *Anderson v. Mather*, 44 N. Y. 249 ; *Wellesley v. Duke of Beaufort*, 2 Russ. 1 ; 2 Story's Eq. § 1337.

The decree of the Chancery Court is reversed, and a decree here rendered, dismissing the bill of complainants.