WILLIAM T. SUTHERLIN, plaintiff in error, *vs.* THE UNDERWRITERS' AGENCY, defendant in error.

1. An attachment bond is, under section 3316 of the Code, amendable on motion, and where the obligee's name was by mistake omitted, but it appeared that it was the intent of the signers of the contract to give a bond payable to the defendant in attachment, it was competent to insert the names in the blank left in the bond for this purpose, and this is especially so when the plaintiff in attachment offered to give new and good security to the bond as amended.

2. When four insurance companies, by a common agent and under a common name, to-wit: "The Underwriters' Agency," entered into an insurance contract by a written instrument, which referred to a certain open policy issued by them to their common agent, for the terms of the insurance, and such open policy stipulated that each company received its share of the common premium separately, and was each liable separately for its one-fourth of any loss, in the same manner as though each had issued a policy separately :

*Held,* that as they had contracted with the plaintiff by a common name, and by a common agent, that a joint action lay against them for any loss under the contract, and that the jury might so mould their verdict, under the provisions of the Code, as to conform to the contract, by finding one-fourth of the loss against each separately.

3. Where an attachment was proceeding, and a declaration had been filed, and the defendant had appeared and pleaded, but there was no replevy, and the court dismissed the attachment for a defect in the bond:

*Held,* that this was such a judgment as might be excepted to and brought for review to this court, although the suit might, as a personal suit, be still pending in the court below.

4. When a suit was pending against four defendants, and the court dismissed the suit on demurrer, for a misjoinder apparent, as was alleged, on the face of the proceedings, but permitted the plaintiff to amend his declaration, striking out three of the defendants and thus retain the suit against one defendant:

*Held,* that the judgment dismissing the suit might be excepted to and brought for review to this court notwithstanding the amendment, and notwithstanding the amended declaration had not yet gone to a final judgment.

5. When notice is given to produce a paper, and the party notified fails to respond, but it appears affirmatively that such paper is lost, and is not, therefore, in the custody of the party notified, his failure to respond personally to the notice and purge himself of any custody of the paper, does not authorize a judgment against him by default as provided in section 3510 of the Code.

Attachment. Amendment. Insurance. Pleadings. Joint and several liabilities. Bill of exceptions. Practice in the Supreme Court. Production of papers. Practice in the Superior Court. Before Judge KIDDOO. Dougherty Superior Court. April Adjourned Term, 1874.

This is the second time this case has been before the Supreme Court: See 46th *Georgia Reports,* 652. Only such additional facts are here stated as are necessary to an understanding of the opinion.

The parties having announced ready, the plaintiff called upon defendant's counsel to produce the original open policy number seven hundred and eighty, issued by defendant to Y. G. Rust, under the notice served upon them.

Mr. Davis, one of defendant's counsel, testified that such paper was used on a former trial, but he had not seen it since; that it was not in his possession, power or control, and that he knew not where it was.

Mr. Vason, of counsel for defendant, testified that he delivered the paper to Mr. Raine, then an agent of the defendant, to be copied, so as to have it embodied in a brief of evidence to be used by defendant on a motion for a new trial; that the original, when in his possession and when used on the former trial, had, before that time, been mutilated and the officers' names torn off; that he did not know where it was, and that it was not in his power, possession, custody or control.

Mr. Raine testified substantially as did Mr. Vason, with the additional statement that it was his recollection that he had returned the paper to the latter.

Defendant's counsel proposed to allow the plaintiff to use a copy of the mutilated original without objection on their part; also to admit the contract of insurance as sued on.

Plaintiff moved for a judgment by default on account of the failure of defendant to respond to such notice. The motion was overruled and plaintiff excepted.

The defendant moved to dismiss the attachment proceedings because the bond was defective.

The facts upon which this motion was based were as follows: The affidavit set out the names of the insurance companies composing defendant in full; the place for the name of the obligee of the bond was left blank, but the defendant was, in other portions of said instrument, referred to as "said fire insurance companies," and as "said insurance companies."

The motion was sustained and plaintiff excepted.

Plaintiff proposed to amend the bond by inserting the name of defendant therein, and by giving new and additional security. This the court refused to permit and plaintiff excepted.

The defendant moved to dismiss the plaintiff's declaration because a joint suit against the insurance companies compos-

ing the defendant could not be maintained under policy seven hundred and eighty. The copy of this policy attached to said declaration contained the following provision :

" It is further understood and agreed by and between the parties hereto, that nothing herein contained, shall be construed as creating or imparting any joint liability on the part of the above named companies or either of them, but that such companies shall be regarded as only severally liable upon this policy for the amount insured by each under the same, in the same manner, and not otherwise, as if each had issued its separate policy for the proportionate amount which each insures as above mentioned; and if any additional amount shall be indorsed upon this policy, it is to be with the understanding that the said companies each become insurers for one-fourth only of each additional amount."

It also appeared from said policy that each of said companies received its share of the common premium separately.

The court sustained the motion and plaintiff excepted.

The plaintiff proposed to amend his declaration by charging each of the companies composing the defendant with one-fourth of the loss, and by asking that the verdict and judgment be moulded accordingly. This the court refused to permit and plaintiff excepted.

The court stated that it would allow the plaintiff to proceed against one of the companies and dismiss as to the others. The suit was accordingly dismissed as to all of said companies except the Germania. To this ruling the plaintiff excepted.

Error is assigned upon each of the aforesaid grounds of exception.

When the case was called in this court, a motion was made to dismiss the writ of error upon the ground that the rulings excepted to were not final, as the case was still pending in the court below. It appeared that the attachment had been levied by service of process of garnishment, which had not been dissolved. The court heard argument of the case reserving its decision upon the motion. The motion was overruled at

the time the judgment in the case was pronounced, as will be found by reference to head-notes three and four.

WILLIAM E. SMITH, by R. F. LYON, for plaintiff in error.

VASON & DAVIS, for defendant.

McCAY, Judge.

1. Under the express words of the Code, section 3316, an attachment bond is amendable. The defect in the bond in this case was plainly a mere mistake—a clerical error. In the very nature of things, it is manifest that it was the purpose of the signers of it to make it payable to the defendant. They made and delivered it to the officer with that intent. To fill up the blank is not to alter in the least the contract actually made, and we do not think the security could take any advantage of the act, as it would, in fact, be, after it is amended, the very contract he intended by his signature to make. In substance, this right of the surety is denied in *Hanson vs. Crawley*, 51 *Georgia*, 529, as the court there held that a memorandum declaring the note payable in gold would bind the security, though it was added after his signature, and without his knowledge, if it were, in fact, true that such was the original contract. But as new security was in this case tendered, we think the right to amend was the stronger. No harm could come. The law is substantially complied with, which is all that is required, as section 6 of the Code declares.

2. Did this case stand only on the open policy, it is not so clear to us that a joint action would lie; but it must be remembered that the plaintiff's right stands not only on this, but on his receipt. *That* is in the name of the "Underwriters' Agency," and is signed by Rust, as the agent, not of each company, but of all. Taking both these papers together, the contract is a joint contract, though, by its terms, each is only liable to pay his share. It is like a partnership with a firm name, which might contract by its name, and yet

Sutherlin *vs.* The Underwriters' Agency.

stipulate in terms the liability of each partner. In England, there might be difficulty in enforcing such a contract at law, for want of a power in the jury to find anything but a general verdict. But under our law the jury has such a right, and no such difficulty exists. Taking both these papers together, we think the contract is clearly a joint one, however precisely it may fix the liability of each for its own share, and we do not doubt that such was the intent of the companies. We have seen a fire policy of these same companies where there was no such open policy, but the insured's name was in the policy itself, and though the same general stipulation as to separate liability was there, as here, yet there was another provision to the effect that if there should be necessity for a resort to judicial proceedings, one joint suit against all, or even a suit against one, should settle the matter.

3. As to the motion to dismiss the bill of exceptions because neither of the errors complained of were in a *final* judgment, we say, as to the attachment the order dismissing it was final as to the plaintiff's rights. He lost by the judgment any lien he had got by his attachment. He lost any summons of garnishment he may have served, and as we all know it is generally only by a summons of garnishment that a foreign insurance company can be got at at all. And this loss was final. The only way in which the error could be corrected was to file a bill of exceptions as to a final judgment. Suppose the plaintiff, after his attachment was dismissed, should go on and get a final judgment, he would not have a right to except to that judgment, and it is only as incidental to a final judgment that an interlocutory bill of exceptions can come up. The same thing may be said as to the other error complained of. If the plaintiff had gone on against the one company, and got a final judgment against it, he would have no cause of complaint against *that* judgment.

4. Nor do we think his amendment was a waiver of his right to except. The judge certifies that he dismissed the plaintiff's case for misjoinder, and then allowed an amendment. It is the same as though he had stricken out the three

companies.    The motion to dismiss the writ of error is an appeal to technical. rules of pleading and practice, which is not, by our law, looked upon favorably.

5. We do not think it was error to refuse plaintiff's motion for a judgment by default.   It was plain from the evidence that the defendant did not have the ,custody of the paper, but that it was lost amongst the lawyers and clerks, and it would have been very unjust to *punish* the defendant. There was no need for the affidavit of the defendant, as by other proof the court was made aware of the loss, and that the paper was not in the power or custody of· the defendant.

Judgment reversed.