# Dunham *v.* Milhous.

*Bill in Equity for Foreclosure of Mortgage; Cross-Bill for Rescission of Contract.*

1. *What are personal assets in equity.*—A debt for moneys loaned by an administrator, under powers conferred by the will of the decedent, secured by mortgage on real estate, is in equity regarded as personal assets, whether arising from the sale of property ordered to be sold, or from the invested products and profits of lands.

2. *Administrator as testamentary trustee; contract in reference to trust property for benefit of his wife, in violation of trust.*—An administrator with the will annexed, having married one of the testator's two daughters, and being charged by the will with the duty of investing and preserving trust funds, the income and profits of which were to be paid annually to the two daughters, to the exclusion of all right on the part of their respective husbands, with remainders to their children, and to the next of kin in default of children, can not enter into any valid contract, by which the title to lands, mortgaged to secure a debt due to the trust estate, can be purchased and held for the benefit of his wife, in violation of the terms of the trust.

3. *Same; when guardian and ward will be held chargeable with notice of such violation of trust.*—In such case, if it appears that the mortgage also secured another debt, due to an infant for money loaned by her guardian, which was also embraced in the decree of foreclosure; the decree being entered satisfied, pursuant to an agreement between the administrator and the guardian, though no money was in fact paid; a part of the debt due to the ward being settled as cash, the guardian charging himself with the amount, and taking a mortgage on the lands for the residue from the nominal purchaser, who held for the benefit of the administrator's wife; the guardian and ward being chargeable with notice of the breach of trust and misapplication of the trust funds, a court of equity will not, at the suit of the ward, enforce the mortgage given to secure the balance of her debt, to the detriment of the contingent remainder-men.

4. *Same; extent of relief in such case.*—The decree of foreclosure having been regularly made, the sale under it properly conducted, reported to the court, and confirmed; deeds executed under the order of the court, and the decree entered satisfied; and the mortgagor not having participated in the breach of trust committed by the administrator and the guardian, who were the legal representatives of the secured debts; although the lands will be held chargeable with the trust funds thus misapplied, at the election of the beneficiaries in remainder, the sale under the decree will not be set aside, nor the mortgagor's rights under it in any way disturbed.

5. *Same; rights of remainder-men, and who may represent them.*—The beneficiaries in remainder, in such case, "may elect to disclaim as to the lands, and hold the trustee and his sureties liable for the sum of the

[Dunham v. Milhous.]

assets thus converted and misapplied by him; and since the remainder-men can not now be known, and may not be *in esse*, the trustee [that is, the succeeding administrator] is the proper and only party to look after their interests, and to preserve the *corpus* of the fund, to be turned over to them when they are ascertained."

6. *Same; estoppel against wife, and relief to ward.*—As to the life-estate of the administrator's wife in the original debt secured by the mortgage, the arrangement being made for her benefit, and she being cognizant of the breach of trust, she is estopped from setting it up, as against the infant, in avoidance of the mortgage given to secure the residue of her debt.

7. *Protection accorded to trust estate in remainder, in absence of pleadings or parties.*—The record in this case disclosing a breach of trust and misapplication of trust funds, by and between parties who are asserting adverse claims to the property, growing out of such breach of trust, while the property is chargeable, at the election of the beneficiaries in remainder, with the trust funds so misapplied, and they are not before the court, nor even known; the court "will not exert its powers in such a service," until the trusts are properly cared for and secured.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 2d January, 1878, by Mrs. Ann E. Milhous, the wife of James F. Milhous, against Mrs. Sallie Blackwell; and sought to foreclose a mortgage on a tract of land, which was described therein as "being the lands of George T. Davis, mortgaged to Robert S. Hatcher, guardian, J. W. Olds and others, and sold by the register in chancery under the decree in the cause of Stephen Croom, administrator of the estate of J. W. Olds, against Geo. T. Davis and others." The mortgage, a copy of which was set out in the bill, was dated March 22d, 1872, and was given to secure the payment of two promissory notes, each for $2,372.82, dated March 22d, 1872, and payable on the 1st January, 1872, and 1873, respectively; signed by Mrs. Blackwell, and payable to the complainant, who was then unmarried, and under twenty-one years of age. The notes were made exhibits to the bill; and it was alleged that they were unpaid, that they accrued to the complainant before her marriage, and that they belonged to the *corpus* of her statutory estate. The circumstances under which this mortgage was executed are fully stated in the opinion of the court, and it is unnecessary to repeat them here. Mrs. Blackwell, in her answer to the bill, stated these facts; admitting the execution of the notes and mortgage, but denying that she had any real interest in the subject-matter of the suit; and she insisted that Mrs. Willie P. Dunham, as the administratrix *de bonis non* of the estate of W. P. Dunham, deceased, and Mrs. Texana Weeden, the wife of Henry V. Weeden, should be brought in, as the real parties in interest, and should be required to litigate with the complainant their respective rights in and to the lands conveyed by the mortgage,

[Dunham v. Milhous.]

growing out of the transactions in which the mortgage originated.

In April, 1868, Mrs. Willie P. Dunham, as the administratrix *de bonis non* of the estate of said W. P. Dunham, deceased, filed her petition, asking to be made a party defendant to the bill, in order that she might file an answer and cross-bill, as necessary to protect the interests of her intestate's estate; and her petition being allowed, she filed an answer and cross-bill, stating the facts connected with the transaction, of which the giving of said notes and mortgage formed a part; and insisting that the entire transaction, as arranged and consummated between H. V. Weeden, who was then the administrator of said W. P. Dunham's estate, and the complainant's guardian, was a violation of trust and duty on the part of said Weeden, in which complainant and her guardian participated with full knowledge. The complainant in the original bill and Mrs. Blackwell were made defendants to the cross-bill, which prayed relief as follows: "That the said sale made on the 21st November, 1871 [the sale at which Mrs. Blackwell became or was declared the purchaser of the lands afterwards conveyed by the mortgage sought to be foreclosed], may be set aside as to the parties to this suit; that the deed and mortgage, and receipts of satisfaction of said decree, under which said sale was made, may, as to them, be annulled and held for naught; that an account may be taken of the amounts due oratrix on said decree and from said Ann E. Milhous for said $2,000 paid her as aforesaid; that said last-named amount may be declared and decreed a lien on said lands, and be first paid out of the proceeds of a re-sale thereof; that said lands be sold, and, after paying said $2,000 and interest, that the residue be applied, *pro rata*, to the payment of said two decrees originally in favor of said H. V. Weeden, as administrator of said Dunham, and of said F. L. Milhous as guardian of said Ann E. Millhous; or that the lands be sold to satisfy the lien of oratrix as above set forth."

An amendment of the cross-bill was afterwards filed, alleging that Mrs. Willie P. Dunham, the complainant therein, in assigning to Mrs. Blackwell and J. D. Hill her interest in the two debts secured by the mortgages of Davis and S. M. Hill, acted under the compulsion of her husband, R. S. Philpot, from whom she afterwards obtained a divorce.

On final hearing, on pleadings and proof, the chancellor dismissed the cross-bill, and rendered a decree foreclosing the mortgage, as prayed in the original bill. From this decree an appeal was sued out by Mrs. Blackwell, and by Mrs. W. P. Dunham as administratrix, and each here assigns errors; Mrs. Blackwell assigning the decree on the original bill; and Mrs.

[Dunham v. Milhous.]

Dunham, the decree dismissing her cross-bill, and the decree on the original bill.

PETTUS, DAWSON & TILLMAN, and LAPSLEY & NELSON, for. appellants.

BROOKS & ROY, contra.

STONE, J.—An effort is made in this case, by pleadings and proof, to show—*first*, that Mrs. Sallie Blackwell was induced by false representations and assurances to enter into the purchase of the Davis plantation, and that therefore she should not be bound by it; and, *second*, that Willie P. Dunham, complainant in the cross-bill, was coerced by duress on the part of her husband, Philpot, to convey her interest in the Hill debt and mortgage, and in the Davis debt and mortgage. Leaving out of view the sufficiency of the pleadings as to these matters of defense, we think the evidence fails to sustain either of them. We therefore dismiss these two subjects, without further comment. It results, that in the discussion of the questions raised by this record, we will treat Willie P. Dunham as having no interest in either the Hill or Davis debts, which, although secured by mortgages on lands, were, at the time of her transfers, only personal assets, as viewed by a court of equity.

Counsel do not differ in the construction of William P. Dunham's will, the original source of title under which Mrs. Weeden and Mrs. [Philpot] Dunham claim, and derive all the title they ever held. Mrs. Sallie Blackwell, widow of Wm. P. Dunham, the testator, dissented from the provisions of the will made in her favor, and took the share of the estate secured to her by the statutes. She, therefore, had no interest in the property in controversy, derived from the will of her husband. The clauses of Mr. Dunham's will affecting the present suit are as follows: "It is further my will and desire, that my plantation .be kept up, and my negroes kept together and worked thereon, with all necessary stock, implements and utensils for that purpose, until such time as my children become of age, or until a division may, from some other cause, become indispensable and necessary." He then directed, that the income and profits be divided into three parts; but the widow's dissent from the will made it necessary to divide them into only two parts, there being but two children. The will then makes the following provision for each of the daughters: "I further give and bequeath to my said executors or executor, administrator or administrators, and their successors in the trusts hereinafter created, one other third" [half of all that was left, after separating the widow's share] "part of my whole

estate and property, both real and personal, which there may be at the time of the division of my estate; to have and to hold the same in trust, to and for the sole and exclusive use, benefit and behoof of my daughter" [Texana and Willie C. each] "absolutely, free and discharged from the debts, contracts, liabilities, or control of any future husband she may have; the rents, profits and issues of said estate, as well as the body, or principal thereof, to be entirely exempt and free from the debts, engagements, contracts or control of such husband; and I further will and require, that the profits and proceeds of said estate and property be paid by such trustee to my said daughter *only*, during her natural life, and to no other person; and that said trustee retain the possession, custody and control of the property and estate aforesaid, during the coverture of my daughter, paying over and accounting to and with my said daughter, if she be then of age, or married, the profits and proceeds of said property annually, as if she was a *femme sole*. And at and upon the death of my said daughter, the aforesaid property and estate, and the natural increase thereof, and the profits and proceeds thereof which may have accumulated, or may have been invested by said trustees, as well as all balances or arrearages which may be in the hands of such trustees, shall go to and belong to the child or children of my said daughter which there may be, in such shares or portions to said children as my said daughter may, by deed in writing, or by her will appoint; and in default of such appointment, then to such child or children in equal parts or shares; and in default of any child or children her surviving, then to the next of kin of my said daughter. And the profits and proceeds to be derived from my plantation, and which I have hereinafter directed to be vested in stocks, or loaned upon bond and mortgage, shall be held, and said proceeds or said investments when made, upon precisely the same trusts, limitations and conditions, as herein declared of and concerning the estate hereinbefore first mentioned."

The will had previously provided, that "the one-third part of said profits and proceeds" [of the plantation] "which is to go to my two daughters respectively, shall, during their minority, after providing for the expenses of their maintenance and education, be by my said executors vested for their sole and exclusive use and benefit as their separate estate, not subject or liable to the debts, contracts, or control of any husband they or either may hereafter have" (upon such trusts and conditions as will be hereinafter more particularly mentioned), "in good stocks, or lent and secured amply by good bond and mortgage; said stocks or said bonds to draw interest annually or oftener, and said interest to be collected as it falls due." The 7th item

[Dunham v. Milhous.]

of the will is as follows: "The powers herein conferred on my executors, shall and may be exercised by any such of my executors as may qualify and be then acting; and in the event that, from death, resignation, failure to qualify, or other cause, an administrator or administrators be appointed and qualify, then such administrator or administrators shall exercise and have the same power as is herein given to my said executors." 9th: "I further will and direct, that at any time hereafter, when it may be necessary to appoint any trustee or trustees for my said wife or my said daughters, in respect of any of the property herein conveyed, or held or to be held under the trusts herein created, my said wife or my said daughters respectively, each for herself, may appoint, by instrument or deed in writing to be by her signed, such trustee, as often and whenever it may be necessary to do so; and such appointment shall in all respects be as effectual and valid, as if made by any court of chancery or other court." Item 12: "Until such time as the situation of my estate will justify the annual division of the net proceeds of my plantation, as has already been directed, it is my will that my executors provide for the support of my family, out of the proceeds of the plantation, or such other means as may be more proper and judicious in reference to the interest of my estate and my wishes in regard thereto, as already expressed."

The will also contains an express power to the executor, and to his successors in the trust, to sell a tract of land and certain personal property. There were, therefore, three sources from which the executor could come into the possession of money assets: the dues to the estate at the death of the testator, the sale of the lands and personal property ordered to be sold, and the surplus of income and profits of the plantation, over and above the sum needed for the maintenance and education of the two infant legatees.

In 1869, Henry V. Weeden had become administrator *de bonis non* with the will annexed of the estate of said William P. Dunham, the testator, and thereby succeeded to the powers and trusts conferred by said Dunham's will on his executrix and her successors. H. C. Hatcher had previously been administrator, and had resigned the trust. During the administration of Hatcher, a debt had accrued to him as such administrator from one Samuel M. Hill, for money lent. This debt was sixteen or eighteen thousand dollars, and was secured by a mortgage on more than two thousand acres of land. Another debt had accrued to him in the same capacity, also for money lent, to one Davis, on which there was then due between three and four thousand dollars. This debt was also secured by mortgage, made by Davis, the borrower, on a tract of more

than one thousand acres of land, and some personal property of small value. Davis' mortgage also embraced and secured, by a conveyance of the same property, a debt of over six thousand dollars to one Milhous, as guardian of Ann E. Milhous, then about sixteen years old, the complainant in the original bill in this cause. The mortgage given to secure the Dunham debt and the Milhous debt was foreclosed by a decree of the Chancery Court, and the property brought to sale while Weeden was acting as administrator of the Dunham estate.

Before the decree of sale mentioned above was rendered, Willie P. Dunham, then known as Mrs. Philpot, had sold and conveyed her interest in the Davis claim and mortgage to her mother, Mrs. Blackwell, who purchased for, and with the money of Mrs. Texana Weeden, wife of H. V. Weeden, the administrator. Mrs. Philpot had also sold and conveyed her interest in the claim and mortgage of Samuel M. Hill, to J. D. Hill; and the latter had come to a settlement with H. V. Weeden of the one half of the debt claimed by Mrs. Texana Weeden, and, in liquidation of the said half of Sam'l M. Hill's debt, said J. D. Hill had executed his three notes, payable to Weeden as such administrator, for the gross sum of eight thousand dollars, secured by mortgage on the same lands, formerly conveyed in mortgage by Samuel M. Hill. The first of these notes for $2,666.66 matured in January, 1872. In the fall of 1871, the Davis lands were sold by the register, under the decree of foreclosure, and were bid off by Weeden in the name of Mrs. Sallie Blackwell, his mother-in-law, at the sum of the two decrees—the Milhous and Dunham decrees—less a small sum realized from the personal property, also sold under the decree. The purchase was intended for the benefit, and in the interest of Texana, wife of said H. V. Weeden, but was put in the name of Mrs. Blackwell, for reasons presently stated.

Before the sale was made, there was a negotiation and agreement between Weeden, administrator of Dunham, and Milhous, guardian of Ann E. Milhous, as to the payment of the share of the purchase-money which would be due to Miss Milhous. Weeden desired to make the purchase in the name of his wife, Texana Weeden; but, inasmuch as she was a married woman, incapable of making a binding personal contract, Milhous objected to having the purchase made in her name. When the sale was made, Weeden became the highest bidder, at the price of about ten thousand dollars; and at his instance, Mrs. Sallie Blackwell, his wife's mother, was set down as the purchaser. The pre-arrangement between Weeden and Milhous was, that if Weeden became the purchaser in the name of Mrs. Blackwell, two thousand dollars of the share of the purchase-money that would be due to Miss Milhous was to be

[Dunham v. Milhous.]

paid in cash, and the balance secured to Miss Milhous by note or notes, and mortgage on the lands purchased. This purchase, though made in the name of Mrs. Blackwell, was, as we have said, made for the benefit·of Mrs. Texana Weeden; and the expectation and intention were, that the moneys to be paid to Miss Milhous for her share, were to be raised from the products of the plantation purchased, and from Mrs. Weeden's share in the Dunham estate; notably, from her interest in the Hill claim and mortgage. Papers were drawn· and prepared to secure the title of the lands to Mrs. Weeden, when she and her husband perfected the payment of Miss Milhous' share of the purchase-money. The two thousand dollars cash to be paid Miss Milhous, were expected to be raised from the J. D. Hill indebtedness described above.

Mrs. Blackwell had not authorized Mr. Weeden to have her set down as the purchaser, and she hesitated about closing the contract. Mrs. Weeden thought the lands were purchased at too high a figure, and was herself reluctant to consummate the purchase. We do not, however, think this affects the merits of the controversy; for the trade was afterwards carried into effect, and closed by writings, pursuant to the terms of the purchase. We think we do full justice to the testimony in the record, when we hold, as we do, that, although Mrs. Blackwell and Mrs. Weeden entered hesitatingly into the purchase, they yielded their objections, and consented to its completion. The exact form in which the trade was finally closed is as follows: Weeden did not have the two thousand dollars he had agreed to pay in cash for Miss Milhous, and J. D. Hill, on whom he relied, was unable to pay it. Hill was a planter, and Milhous, the guardian, was his commission-merchant. It was thereupon agreed between Hill, Milhous and Weeden, that a credit of two thousand dollars should be entered on Hill's note to Weeden, administrator, past due; that Milhous would debit Hill with this sum, as for an advance made to him, and that Milhous would charge himself therefor in his account as guardian for Miss Milhous. This was carried into effect, with the full knowledge on the part of Milhous of the source from which the two thousand dollars came. Milhous, in his subsequent settlement with his ward, accounted to her for this two thousand dollars so received. Thereupon, Mrs. Blackwell executed her notes, and mortgage on the lands so purchased, for the balance due Miss Milhous. The decrees of foreclosure in the suit against Davis were then entered satisfied; Weeden, as administrator, entering satisfaction of the decree in favor of the Dunham estate. The register reported to the court the· sale, its terms, and that they had been complied with; the sale was confirmed, and title ordered to be made to Mrs. Blackwell,

which was accordingly done. The present bill was filed to foreclose the mortgage given by Mrs. Blackwell, to secure the money due to Miss Milhous.

As we have said, both the claims on Hill and on Davis were, in equity, personal property, although secured by mortgage on lands. They must have been derived from the invested products and profits of the plantation, or from the sale of the lands and personal property directed by the will to be sold. Whether from the one source or the other, they were but personal assets. *Toomer v. Randolph*, 60 Ala. 356; 1 Jones on Mortg. § 700; 2 Story's Equity, § 1212. So, come from what source it may, both the Hill claim and the Davis claim were personal assets of the estate of William P. Dunham, under the control, and properly under the control, of Weeden, the then administrator, and charged with the trusts imposed upon them by the provisions of the will. The will declares, that the income and profits of the property should be for the sole and exclusive use of the daughters during their lives, with a valid remainder over, of both the *corpus* and the invested income and profits.

The money and assets employed by Weeden in the purchase of the Davis plantation—namely, the two thousand dollars raised on the Hill debt, and that portion of the Davis mortgage debt due to the Dunham estate—being part of the trust estate created by the will of W. P. Dunham, Weeden, the administrator and trustee, was charged with the execution and preservation of the trust; *first*, that Texana and Willie P. should enjoy the income and profits during their lives, and, at their several deaths, the remainder-men under the will should receive and enjoy the *corpus* and vested profits, without abatement or diminution. Milhous, the guardian, knew of the trust—knew of the abuse that was being made of it—and neither he nor his ward was a *bona fide* purchaser, in that sense which will protect it in their hands. They must be charged with notice; and this constitutes the land a trust fund, no matter into whose hands the title may have thus passed. Mrs. Blackwell did not purchase for herself, but for her daughter, Mrs. Weeden. The latter is not a purchaser without notice.—*Preston v. McMillan*, 58 Ala. 84; 2 Story's Equity, § 1211; *Lanier v. Moore*, at the present term; *Shorter v. Frazer*, 64 Ala. 74.

It is contended for appellee—defendant in Mrs. Dunham's cross-bill—that the relief prayed in the cross-bill can not be obtained, because one prayer of that bill is, that the sale of the Davis land be set aside; and this can not be done, without making Davis a party. The effect of that relief, if granted, would be, to revive the debts of Davis, now entered satisfied, and leave the lands as a security in equity for those debts. This could not be done, without having Davis before the court

[Dunham v. Milhous.]

as a party.   But we do not understand this to be the only, or even proper relief, under the circumstances.   So far as we can perceive, the sale was regularly and properly made, under decrees properly rendered.   The lands were bid off at the sum of the decrees; the decrees entered satisfied by the complainants therein respectively; the sale reported and confirmed; the purchase-money reported paid; title ordered to be made, and actually made, pursuant to the terms and conditions of sale. This devested title out of Davis, and satisfied his debts.   No fault, or breach of trust, was imputable to him.   The fault and breach of trust were the acts of Weeden, of which Milhous had knowledge, and in which he participated.   This did not revive the debts, nor relieve the lands of the trust, unless the beneficiaries elect to disclaim as to the lands, and proceed against the trustee and his sureties for the sum of the assets thus converted and misapplied by him.   And, as the remaindermen can not now be known, and may not be *in esse*, the trustee is the proper and only party to look after their interests, and to preserve the *corpus* of the fund, to be turned over to them when they are ascertained.

What of the life-estate or interest of the two daughters, Texana and Willie P., in the debt secured by the Davis lands, and, incidentally, in the two thousand dollars of the Hill debt, used in the purchase of the Davis lands?   We have seen that Mrs. Dunham, the complainant in the cross-bill, had sold and conveyed her interest in these claims, and therefore she can assert no personal interest in them.   Mrs. Weeden knew of the application of these trust funds in the Davis land purchase. The purchase was made for her; and, although she thought her husband promised too much for the land, we feel bound to hold she finally assented to the consummation of the purchase, and to the employment therein of the two thousand dollars raised out of the Hill indebtedness.   These claims or interests being personal assets, the doctrine of estoppel applies, and Mrs. Weeden has thus estopped herself from asserting, as against Ann E. Milhous, her life-interest in the income and profits arising out of these two funds, namely: the two thousand dollars of the Hill debt, and the whole of the Davis debt due to the Dunham estate; for she had become the owner of the Willie P. Dunham interest.—*Drake v. Glover*, 30 Ala. 382; 1 Story's Equity, §§ 385 *a*, 386.

We have thus traced the trust funds of the estate of William P. Dunham into the Davis lands, placed there by Weeden, the trustee, as a means of having the title to the lands secured to his wife, and in disregard of the interests of the remaindermen, so far as we can perceive.   Neither Milhous nor his ward is an innocent purchaser; nor is Mrs. Blackwell, who bought

simply as a conduit, or trustee for Mrs. Weeden. The lands are liable for the trust funds invested in them. The two thousand dollars raised on the Hill claim are a primary charge on the whole lands; for this sum, by a common breach of trust, entered into the purchase of the whole tract, but went to Miss Milhous. The amount of the Dunham decree employed in the. purchase, is a lien on an undivided portion of the land, corresponding in quantity with the proportion which the Dunham decree bears to the sum of the Milhous and Dunham decrees against Davis. But neither Willie P. Dunham nor Texana Weeden has any interest in these several liens. Their lifetime interest in them—the only interest they owned—has passed to, and vested in Ann E. Milhous. This, by the sales . made by Willie P., and by the estoppel operating against Mrs. Weeden. We said the entire interest. Perhaps, this should be qualified. They stand pledged only for the unpaid purchase-money due to Miss Milhous. If, after securing the *corpus* of the trust for the benefit of the remainder-men, there remain a balance of accruing income and profits after satisfying the unpaid balance to Mrs. Milhous, it would seem that balance would be properly the property of Mrs. Weeden. In this connection, it may not be improper to say, that the Davis claim it is the duty of the trustee to secure for the remainder-men, is $2,000, the principal of the sum lent. The accrued interest belonged to the life-tenants, and has passed as security to Mrs. Milhous. In taking the account, however, to ascertain the proportion of the land which stands charged with the Dunham trust fund, secured by the Davis mortgage, each claim must be estimated at its entire sum, including accrued interest; in other words, at the face of the several decrees.

In what we have said above, we have covered a much broader surface than was intentionally brought to view by the pleadings, or by the arguments of counsel. We find, however, a trust fund involved, and parties dealing with it without proper regard to the interests of the remainder-men. Who are, or will be the remainder-men, can not be known; and hence there is no one except the trustee—administratrix—who is charged with the duty, and clothed with the power of protecting their interests. The decree of the court, in this cause, if executed, will greatly imperil, if not destroy, the interests in remainder. That is fully shown in the testimony, documentary and otherwise, about which there is no dispute. The pleadings bring these facts incidentally before us, and we can not shut our eyes to the delicate, if not sacred trusts, we are asked to ignore. A court of equity can not, and will not, exert its powers in such a service. It can not grant relief, when the manifest result will be a probable wrong to others, who are not, and can not

[Clark v. Knox.]

be, brought before it. The Davis tract of land, charged as we have shown with two trusts, can not be sold—must not be sold—until the trusts are properly cared for and secured. This is one of the highest and most important functions of the Chancery Court, and it should be looked to, that the trust fund be well and amply secured.—*Crawford v. Cresswell*, 55 Ala. 497.

Lest what we have said may be misunderstood, we deem it proper to state that, in the negotiation and purchase of the Davis land in the name of Mrs. Blackwell, for Mrs. Weeden, Mrs. Philpot [Dunham], the present administratrix and trustee, took no part, and was not then trustee. She, consequently, was no party to the abuse of the trust fund, by investing it in the purchase of the Davis land. We make this statement, lest it might be supposed the principle declared in *Pistole v. Street*, 5 Por. 64, and afterwards followed, should govern this case. There are no facts in this record, on which to invoke that principle.

In the light of the principles we have been considering, the original bill in this cause needs amendment. The administratrix and trustee, and Mrs. Weeden and Mrs. Dunham, as individuals, are necessary parties. So, the averments of the bill should be so amended, as to present the proper facts, which will give to the complainant the relief she is entitled to, as indicated above. The decree of the chancellor, granting relief on the original bill, is reversed, and the cause remanded. The cross-bill should not have been dismissed, but will need amendment to make it correspond to the original bill as amended.

Reversed and remanded.