## KOLLOCK, guardian, *v.* WEBB *et al.*

1. The action being against four persons jointly, a judgment on demurrer dismissing it as to three of them is final in its nature, and may be brought to the Supreme Court by the plaintiff while the case is still pending in the court below as to the other defendant.
2. Remaindermen, whether their interest be vested or contingent, may appeal to a court of equity to prevent the life-tenant from wasting and destroying the corpus of the estate.

Argued June 20, — Decided July 17, 1901.

Equitable petition. Before Judge Estes. Habersham superior court. September 12, 1900.

*W. T. Crane, T. S. Bean, L. E. Bleckley,* and *Robert McMillan,* for plaintiff. *J. B. Jones* and *H. H. Dean,* for defendants.

COBB, J. Bruce Thyler LaPierre, Elsie May LaPierre and Bessie Calhoun LaPierre brought their petition in the superior court against Hiram H. Webb, Susan M. Webb, Anna E. LaPierre individually and as trustee, and Thomas J. Gastley as sheriff, alleging that the plaintiffs were the minor children of Alonzo N. and Anna E. LaPierre, that their father was dead, and that they knew of no person whom they could call to their aid to act as their next friend. The petitioners further alleged, in substance: On February 26, 1883, their mother (then Anna E. Thyler) executed and delivered to their grandmother, Eliza Jane Thyler, a deed conveying certain real estate situated in the State of New York. The deed was executed in the State of Georgia, but at the time of its execution both the grantor and the grantee were residents of the State of New York. Under the deed the property therein described was conveyed

to Eliza Jane Thyler, party of the second part, upon certain uses and trusts, "that is to say : To let and lease the same, and after paying all taxes, assessments, water-rents, insurance premiums, repairs, and all other necessary charges and expenses, to apply the net income of one half part thereof to the use, maintenance, and support of the said party of the first part, for and during her natural life, and on her death to convey, transfer, and pay over the half part of the said premises, or that which shall have been substituted in its place, as hereinafter provided, to the lawful issue of the said party of the first part, to them, their heirs forever. But if the said party of the first part shall die leaving no lawful issue her surviving, then to convey, transfer, and pay over the same to such person or persons in such proportions as she shall by her last will and testament, or instrument in the nature of such will, appoint and direct. But if she shall die leaving no lawful issue her surviving and no such last will, or instrument in the nature of a will, then to convey, transfer, and pay over the same to the right heirs at law of the said party of the first part, to them and their heirs forever. And to apply the net income of the other half part of the said premises, or that which may be substituted in its place, to the use, maintenance, and support of the said party of the second part, for and during her natural life; and if she shall die before the said party of the first part, then, after her death, to apply the said net income to the use, maintenance of the said party of the first part during the residue of her natural life, and on the death of the survivor of the said parties of the first and second parts, to convey, transfer, and pay over the said half part of the said premises, or that which shall have been substituted in its place, to the lawful issue of the said party of the first part, to them and their heirs forever. But if the said party of the first part shall leave no lawful issue surviving the said survivor of the parties hereto, then to convey, transfer, and pay over the said half part of the said premises, or its substitute, to such person or persons, and in such proportions, as the said party of the second part shall by her last will and testament, or instrument in the nature of a last will, direct and appoint, and in default of such will or instrument, to the right heirs at law of the said party of the first part, to them and their heirs forever. With the power unto the said party of the second part and her successors, and she and they are hereby expressly authorized and empowered, to sell

and convey the said premises or any portion or portions thereof, and any and all real estate which may be substituted in its place and any portion or portions thereof, with the consent, however, of the said party of the first part, to be evidenced by her joining in and executing the instrument or instruments of conveyance thereof, and to invest and keep invested the proceeds thereof, or, with the consent of the said party of the first part, to purchase with the said proceeds other real estate, and to hold the said proceeds, securities, or investments and real estate so purchased with the said proceeds, upon the same trusts, for the same uses, and with the same powers as the premises herein described."

Eliza Jane Thyler is dead, and Anna E. LaPierre has been appointed her successor in the trust provided for in the deed. The deed was within the provisions of that part of the laws of New York relating to uses and trusts, wherein it was provided, among other things, that "Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate." The deed was a New York contract, and under the law of New York, just quoted, the plaintiffs were vested remaindermen. The property mentioned in the deed was worth from twenty-eight to thirty thousand dollars, and the net income therefrom was from twelve to fifteen hundred dollars per annum. A portion of the property was subsequently sold and the proceeds invested in property in the State of North Carolina. In violation of the deed of trust, Eliza Jane Thyler and the father and mother of plaintiffs incumbered the property in North Carolina with a mortgage to secure a debt due to a building and loan association, which had full notice of the want of power in the parties to legally create the lien. In 1890 petitioners' father became acquainted with H. H. Webb, of Clarkesville, Georgia; and the petition then proceeds to set forth various transactions between Webb and Mrs. LaPierre, and Mrs. Thyler, and between Mrs. Webb and Mrs. LaPierre, consisting of sales, loans of money, conveyances, mortgages, and the like, from which it appears that the remaining portion of the New York property had been sold and the proceeds used to pay the individual debts of the father and mother of the plaintiffs, the debt due the loan association by mortgage on the North Carolina property being one of them. As a consequence of these various transactions be-

tween the Webbs and the mother and grandmother of plaintiffs, the proceeds of the sale of the property mentioned in the deed of 1883, as well as the proceeds of the sales of other property bought with the proceeds arising from the sale of the property mentioned in the deed, have become intermingled with the individual property of Webb and his wife, both of whom had notice, at the time of each transaction, of the source from which the money which went into their possession arose; and if something is not done to prevent it, the entire property will be dissipated and the interests both of petitioners' mother as the life-tenant and of themselves as remainder-men will be entirely dissipated, and upon the death of their mother there will be nothing remaining of the New York property or the proceeds arising from the sale thereof.    It is distinctly alleged that the proceeds of the different sales can be directly traced into the possession of Webb and his wife, both of whom had full notice of the fact that the mother of plaintiffs had no right to use the proceeds in any other way than for purposes of reinvestment.    The petition describes with great particularity each of the transactions referred to, and the property to which it relates, and into whose possession the property and proceeds thereof have gone.    Webb was attempting to have sold a portion of the property which was still in the possession of their mother, under certain tax executions of which he claimed to be the transferee.    These transfers were invalid, for the reason that they were not made by a proper officer, being made by the tax-collector, when they should have been made by the sheriff. The prayers of the petition were, in substance, that the sale under the tax executions be enjoined, that Webb be restrained from further transferring his property or removing beyond the jurisdiction of the State, that a certain note signed by the mother of petitioners individually and as trustee, and payable to Mrs. Webb, together with a mortgage given to secure the note, be set aside and cancelled, that a full accounting of the property traceable into the hands of the different defendants be had, and that it, by a proper decree, be placed in a position where it might be used in the manner described in the deed of 1883 during the lifetime of the mother of petitioners, so that the property, after her death, may be delivered to the plaintiffs as contemplated by the deed.    While the case was pending Kollock was appointed guardian ad litem for the petitioners, and thus became a party plaintiff to the case.    All of the defend-

ants except Mrs. LaPierre united in a demurrer to the petition, in which they set up that there was no equity in the petition, and that it set forth no cause of action; that it appeared upon the face of the petition that the plaintiffs had no title to the property and no right to recover and maintain the suit, and that no such right had accrued to them under the deed upon which they based their claim; that under the deed the absolute title was in a trustee, and that during the life of Mrs. LaPierre the trust was executory and the remainder was contingent, and that until the death of the life-tenant the sole right of action was in the trustee and in no other person whatsoever. The court sustained the demurrer, and the plaintiffs excepted.

1. Upon the call of the case a motion was made to dismiss the writ of error, upon the ground that the case was still pending in the court below, for the reason that as Mrs. LaPierre had not united in the demurrer, the case was still pending as to her. Under the ruling made in the case of *McGaughey* v. *Latham*, 63 *Ga.* 67, the motion to dismiss the writ of error must be overruled. It was there held that, the action being against two persons jointly, a judgment on demurrer dismissing it as to one of the defendants is final in its nature and may be brought to this court by the plaintiff while the case is still pending in the court below as to the other defendant. In the opinion Mr. Justice Bleckley said: "The action brought was a joint action against two, and no such action is now pending in that court, the court having dismissed it as to one of the defendants on the demurrer which we have just discussed. The judgment of dismissal was final in its nature, and while it stood no further proceedings could be had below except against the other defendant. It is manifest that the case as a joint action was at an end, and that to reinstate it the plaintiffs were without remedy other than a writ of error." See also *Sutherlin* v. *Underwriters' Agency*, 53 *Ga.* 442. In *Shealey* v. *Toole*, 66 *Ga.* 573, it was held that the grant of a nonsuit as to one of two defendants is not such a final judgment as will give the other the right to bring the case to this court, it appearing that the case was still pending in the court below as to the other defendant. The case of *Zorn* v. *Lamar*, 71 *Ga.* 80, 85, is clearly distinguishable from the case of *McGaughey* v. *Latham*, supra, but some of the language of Mr. Chief Justice Jackson on page 88 would indicate that he did not apprehend what seems to us to be the full purport of the ruling made in the

*McGaughey* case.    The language of the learned Chief Justice rather indicates that where the cause of action was joint, a dismissal as to one of the defendants would authorize the bringing of a writ of error, notwithstanding the case had not been dismissed as to the other, but that where the action was joint, though the cause of action was several, the right to bring a writ of error while the case was pending as to one of the defendants did not exist.    Upon an examination of the *McGaughey* case it will appear that the action was joint, but that the cause of action was several, the suit being against one alleged to be indebted upon an account and against another alleged to be liable on account of a promise to pay the account.    The object of the suit was to hold the latter person liable as security, a liability which could have been asserted in a suit brought against him alone, provided he was liable at all as security.    In the case of *Deadwyler* v. *Bank*, 110 *Ga.* 511, the court followed the reasoning of Mr. Chief Justice Jackson in *Zorn* v. *Lamar*.    The case of *McGaughey* v. *Latham*, being a unanimous decision by three Justices and never having been under review, must be followed in preference to the later case of *Zorn* v. *Lamar*, even if that decision can be properly construed to be in conflict with the *McGaughey* case, as well as in preference to *Shealey* v. *Toole*, notwithstanding that was a unanimous decision, and *Deadwyler* v. *Bank*, which was a decision by five Justices only, and therefore not absolutely binding as authority.    It is our duty in any event to follow the earlier decisions of the court when concurred in by all the members of the court, but we the more cheerfully follow them in cases which, like the present, relate solely to questions of practice, which it is important should be settled and not open to fluctuation, notwithstanding they may be not in exact accord with technical niceties.    The present case being an action against several persons jointly, and not a joint cause of action against them, the rule laid down in *McGaughey* v. *Latham*, supra, is controlling.    See also *Rives* v. *Rives*, 113 *Ga.* 392, in which it appears that this court in allowing a reinstatement did so solely on the idea that by a correction of the record it was shown that the original petition set forth a joint cause of action, thus again following the reasoning of Mr. Chief Justice Jackson referred to above. This, however, resulted in no injury to any party; for the case was actually reinstated and decided on its merits.

2. It was contended by counsel for plaintiff in error, in the argument here, that the deed of 1883 should be construed according to the laws of New York, while counsel for the defendants in error contended that it was governed, as to validity and effect, by the laws of Georgia.    For reasons which will hereafter appear, we do not consider it material to a proper determination of the case to authoritatively decide this question, though we incline to the opinion that, as both the grantor and the grantee in the deed were domiciled in the State of New York at the time it was executed, and the property upon which it was operative was located in that State, the validity and effect of the contract must be determined by the laws of New York, notwithstanding its actual execution may have taken place in the State of Georgia.    See, in this connection, *Latine* v. *Clements*, 3 *Ga.* 432; *Kerr* v. *White*, 52 *Ga.* 362; 3 Am. & Eng. Enc. L. (1st ed.) 563; Story, Con. Laws (8th ed.), § 363.    Relying upon the allegations in the pleadings as to what is the law of New York, so far as these allegations give information on the subject, and the presumption that the common law is of force as to matters about which there are no allegations, we think that, whether or not the deed be construed under the law of New York or under the law of this State, a proper construction of the same is as follows :   After the death of Mrs. Thyler, Mrs. LaPierre is entitled to a life-estate in the whole property, and as life-tenant is entitled to the income and profits arising from the property during her life, the corpus being kept intact to pass to those who are to take under the terms of the deed after her death.    The deed having been executed before the marriage of Mrs. LaPierre, the remainder over to her lawful issue and their heirs forever created a contingent remainder, but upon the marriage of Mrs. LaPierre and birth of children the contingency no longer existed; there were then, during the existence of the particular estate upon which the remainder was based, persons in esse to answer to the description provided for the remaindermen, and the remainder became vested; but this remainder, though vested, under the other terms in the deed belonged to that class of vested remainders which was subject to be devested upon the death of Mrs. LaPierre without lawful issue surviving her.    See 20 Am. & Eng. Enc. L. (1st ed.) 838 et seq.; *Daniel* v. *Daniel*, 102 *Ga.* 181, 183, and cases cited; *McDonald* v. *Taylor*, 107 *Ga.* 43, 45, and cases cited.    While in our opinion the deed properly construed gives to

the living children of Mrs. LaPierre a vested remainder subject to be devested upon her death without issue, still for the purposes of the present case we think it is immaterial whether the remainder created by the deed for the benefit of the children of Mrs. LaPierre was vested or contingent. A life-tenant is entitled to the corpus of the property for his own use, but this possession is subject to the right of the remaindermen to have the property in a state of security to be forthcoming to them upon the termination of the life-estate. Bowman v. Long, 26 Ga. 142. In Dickinson v. Jones, 36 Ga. 97, it was held that threatened waste by any life-tenant, or person claiming under such a one, would be promptly and efficiently restrained by a court of equity upon application by any remainderman. In the case of Griswold v. Greer, 18 Ga. 545, it was distinctly ruled that a contingent remainderman had a right to bring a suit against the life-tenant and one co-operating with him, to prevent the waste of the corpus of the property, and the removal of the same beyond the jurisdiction of the court. The right of a contingent remainderman, either in his own name, or through a proper representative, to appeal to a court of equity during the continuance of the life-estate for the preservation and security of the property, in order that it might be forthcoming at the termination of the life-estate, was distinctly recognized in the case of Keaton v. Baggs, 53 Ga. 226. See also Fleming v. Hughes, 99 Ga. 449. In Clarke v. Deveaux, 1 Rich. Eq. 172, the Supreme Court of South Carolina held that cestuis que trust whose interests are future and contingent may, upon sufficient grounds, maintain a bill against the trustee and tenant for life to have their interests secured. In the opinion Moses, C. J., said: "If the remainder is only contingent, still the party representing it, as we have said, is not prevented from seeking the aid of this court for its safety and preservation. A cestui que trust, though entitled to a mere contingent benefit, may, upon reasonable cause shown, apply to this court to have his interest properly secured. . . It might not, probably, be stretching the jurisdiction of equity too far to say that one who holds for a contingent remainderman, and who fraudulently converts the estate confided to him to his own use, may be held to answer for such disposition, either by requiring an account, and the payment of the money into court, or, if the property is still under his control, to transfer it to the succeeding trustee."

A case very similar to the present one is that of Wright *v.* Miller, 4 Selden (N. Y.), 9. In that case a conveyance of real estate was made to a trustee, with power, with the grantor's consent during her life, to sell or lease, and from the proceeds, after defraying the expenses of the trusts, to pay over the residue for the reasonable support of the grantor as she might require the same during her life, and to accumulate the surplus, and at her death to apply it to the bringing up, education, and support of such child or children as she should or might have during the life of such child or children, with remainder over in default of children. It was held that the life-tenant did not have vested in her by the terms of the deed an equitable fee simple, and she had no power to extinguish the trust by conveyance to a third party; and that upon the grantor's having children they became entitled to a vested interest in the trust estate, and to bring an equitable action to avoid a fraudulent disposition of it by the grantor and trustee. See also Johnson *v.* Johnson (Ohio), 38 N. E. 61; Dunham *v.* Milhous, 70 Ala. 596, 606; 2 Perry, Trusts (5th ed.), §§ 539, 540, 547. When it is conceded that the plaintiffs are entitled to be heard in a court of equity, and we think they are so entitled, whether their interest be that of vested or merely contingent remaindermen, there is no difficulty whatever in holding that as against the demurrers filed to the petition the plaintiffs are entitled to the relief sought upon the allegations made by them. The life-tenant under the deed has now become the trustee, and by reason of contracts, conveyances, and other transactions, entered into by her in her individual capacity, as well as in her capacity as trustee, a portion of the trust property has been converted into money, and has passed into the hands of Webb and his wife, and there is a probability that the remaining portion will be sold and the money arising therefrom pass likewise into their hands, or into the possession of some one who may have no notice that it is charged with the trust; the allegations in effect showing a state of affairs where, unless relief along the lines indicated in the prayers of the petition is granted to the remaindermen, there will not only be no estate to be turned over to the remaindermen at the expiration of the life-estate, without regard to who may be entitled to take at that time, but the estate will be entirely consumed, destroyed, and dissipated before the time for the life-estate itself to determine. Under such circumstances the remainder-

men, whether contingent or vested, either in their own name or in that of a proper representative, have a right to be heard in a suit against the life-tenant and trustee and those co-operating with her, to have an accounting and determine how much of the property in which they are interested as remaindermen is still in the possession of the life-tenant and trustee, how much is still in the possession of the other defendants who took the same with notice of the rights of the plaintiffs, how much is in the possession of the defendants other than the life-tenant which has been purchased with the proceeds arising from the sales of property by the life-tenant, and how much of the proceeds of such sales have gone into the possession of the other defendants with knowledge of the source from which it was derived; and upon these facts being ascertained, a decree should be entered, fixing and ascertaining of what the estate consists at the date of the decree, and making provision for its investment and preservation, either by the present trustee, or by a successor to be appointed, if the present trustee is then for any reason an improper person to be entrusted in the future with the corpus of the property. The petition set forth a cause of action. If its allegations are true, and for the purposes of the demurrer this must be admitted, it is overflowing with equity, and is not subject to any of the objections set up in the demurrer. The allegations are sufficient in their nature to make a strong appeal to the conscience of the chancellor for the preservation of the rights of these helpless infants, who so plaintively appeal to the court to be allowed to come under its protection as wards in chancery. If the prayers of the petition are not sufficient to give all of the relief which the circumstances of the case require, they may be amended when the case comes on for a final hearing. The plaintiffs are entitled to be heard by a court of equity; they have just cause for appealing to that tribunal, and the doors of that court, which is supposed to always have a ready and willing ear to hear the cries of the weak, the helpless, the wronged, and the friendless, should not have been closed against them. "Equity wishes the plundered, the deceived and the ruined, above all things, to have restitution." 1 Cyclo. Law & Proc. p. 1159, citing Lofft. Max. 374.

*Judgment reversed. All the Justices concurring.*