## BEAZLEY v. MITCHELL.

1. The owner of stolen goods may maintain detinue, or trover, against a purchaser from the thief, although the latter has never been prosecuted, and although the owner had just reason to believe the goods were stolen from him by the individual named as the thief.

Error to the County Court of Sumter.

Detinue by Beazley against Mitchell, for a gold watch. The declaration is in the usual form, to which the defendant pleaded, with other pleas, one in the terms following, to wit : " *Actio non*, because the defendant says, that on or about the 10th day of November, 1842, at the county, &c. he the said defendant, purchased the said watch, from one Jordan Webb, and that the plaintiff had good reason to believe that said Jordan Webb committed a larceny, by stealing the said watch from him, the said plaintiff, on, &c., at &c., and that said plaintiff has not prosecuted said Webb, by issuing a warrant, nor by indictment, and has not used such means as were in his power to bring Webb to justice; but that the said Webb has not been convicted, acquitted, nor prosecuted for said larceny of said watch, and this," &c. To this the plaintiffs replied, *precludi non*, because he says he was, at the time the said felony was committed by the said Webb, if any such was committed, sick, diseased, and confined to his bed of disease, and wholly disabled from taking any proceedings against said Webb, or causing any to be taken, and that the said Webb, before his, the said plaintiff's disability was removed, departed from the State of Alabama, in which State the plaintiff then, and ever since resided ; and the said Webb has ever since removed to places beyond the knowledge of the plaintiff, and beyond the jurisdiction of the courts of this State, and the plaintiff has been by said disease on his part, and by such avoidance of the said Webb, prevented

from prosecuting said Webb, for any felony by him committed, if any exists, without default or neglect on his part, and this, &c., wherefore he prays judgment for his costs.

The defendant demurred to this replication, and the court overruled the demurrer.   Afterwards, the plaintiff had judgment on verdict on the other pleas.

The judgment overruling the demurrer, is assigned as error.

METCALFE, for the plaintiff in error, insisted, that no action can be maintained against the purchaser of goods stolen until the felon has been prosecuted.   [Morgan v. Rhodes, 1 Stewart, 70 ; McGrew v. Cato, Minor, 8 ; Gimson v. Woodfall, 2 C. & P. 41 ; 2 Saund. Pl. & Ev. 876 ; 2 Term Rep. 750; Foster v. Tucker, 3 Greenl. 458 ; Brady v. Keating, 4 Ib. 164.]

JON. BLISS  and BALDWIN, contra, insisted that the rule of public policy, requiring the prosecution of the thief before the loser can regain his property by action, is one of doubtful propriety, and ought not to be extended beyond the mischief to be put down.   [15 Mass. 336.]   It must be confined to the immediate transaction, and ought not to be so extended as to protect a purchaser.   [3 Porter, 326.]

If this view is correct, the plea is bad, but certainly if the felon has fled before  the loser has an opportunity to prosecute, public justice does not require that another shall acquire the title to the stolen property.

GOLDTHWAITE, J.—The question in this case certainly deserves to be classed as one of the curiosities of the law ; and not the less so, because it seems to have been held, by at least one eminent judge, that the owner of a chattel stolen cannot have trover against one who purchases from the thief, until after the conviction of the felon.   [Gimson v. Woodfall, 2 C. & P. 41.]   Chief Justice Best, before whom this case was tried, seems to have rested his decision on Harwood v. Smith, 2 Term, 750, but neither that nor any other adjudication in bank sustains it.   In that case, the sheep, for converting which the defendant was sued, had been sold in *mar-*

*ket overt* and thus the title of the owner divested. This is the precise ground upon which the matter is put by Judge Buller, and it was only because the owner was entitled to restitution after conviction that the title was said to be *in dubio ;* nor must it be forgotten, the action was against one who never had possession after conviction. The title was given by the sale in *market overt,* and did not revest until the conviction, but the conversion by the defendant was after the one, and before the other. Although the impression is so common, that the owner whose goods have been stolen, cannot have restitution without a prosecution of the thief, yet it is entirely without foundation ; as we will proceed to show.

By the ancient common law, a remedy was provided, in the nature of an action against the thief, called an appeal of larceny, in which, if the plaintiff succeeded, he not only had judgment of restitution, but effectually protected himself against future accidents of a like kind, by hanging the offendor. It is of this proceeding that Sergeant Hawkins says, it seems to be agreed, that by the common law, restitution could not be had by any other *prosecution* whatsoever. [2 Hawk. 241, § 55.] To remedy this inconvenience, as early as the 21st year of Henry VIII, a statute was passed, directing the judges to award restitution when the felon was convicted by indictment, upon evidence given by the prosecutor. If he was convicted on other evidence, the crown took the felon's goods as a forfeiture. But if before conviction, and before the officers of the crown seized the goods, the owner could possess himself of them, there never was any law to prevent him from so doing. Hawkins, in treating upon the appeal of larceny, says, " I shall premise, that until such goods are seized to the use of the king ,or of some other person claiming them under the crown as being waifs, or the goods of a felon, *&*c. the rightful owner, without any fresh suit or appeal, may seize them wherever he finds them ; but they shall not be restored to him *after such seizure by others,* without bringing his appeal," &c. [2 Hawk. 239, § 39.] Nor was there ever any law in England, except that which relates to *markets overt,* which prevented the owner from having trover against a third person, possessing himself of the stolen

goods, without a right from the King, or some one entitled to the forfeiture. Foxley's case, (5 Coke, 109,) was this very action, brought by the owner against one who justified that the Queen was seized of the manor of N. P. and that certain persons unknown stole the sheep from the plaintiff, and brought them within said manor, and there left and waived them. Whereupon the defendant, as the Queen's bailiff of said manor, seized them to the Queen's use, as goods waived there. On demurrer, the bar was held ill, for it did not show the sheep were forfeited. Lord Coke there says, if the goods are not forfeited, " the owner may take them when he will, without any fresh suit."

Having thus shown, the doctrine has no other foundation than as connected with forfeiture, and even then only to a limited extent, it is wholly unnecessary to examine the matter further, as the notion of sales in *market over* has never obtained in this country. If the owner has the right of recaption, we apprehend it carries with it the right of suit to the same extent as that of recaption. The plea itself is clearly bad, and therefore no notice of the replication is necessary.

Judgment affirmed.