# Milhous *v.* Dunham.

*Bill in Equity for Foreclosure of Mortgage for Purchase Money of Land; Cross-Bill for Rescission of Contract.*

1. *Loan of trust funds, secured by mortgage, not changing character of funds.*—A loan of trust funds by a testamentary trustee, secured by mortgage on lands, does not change the character of the funds, nor constitute an investment in real estate : the debts are *choses* in action representing money, and are subject to the provisions of the trust.

2. *Rights of life-tenant and remainder-men in trust funds.*—When moneys are bequeathed in trust, to be invested by the trustees in good stocks, or in loans secured by bond and mortgage, the income to be paid to the testator's two daughters during life, with remainder to their children, if any, and remainder over in default of children, it is the duty of the trustees to preserve the principal of the fund for the benefit of the remainder-men, paying the interest only to the tenants for life ; and any surplus of accruing interest during the minority of the tenants for life, in excess of their maintenance and education, becoming a part of the principal, should be preserved in the same way.

3. *Discharge of debts by tripartite agreement.*—Where two debts were secured by the same mortgage, one due to a guardian, and the other to an administrator and testamentary trustee, each for money loaned ; and the administrator having purchased the land, for the benefit of his wife,

[Milhous v. Dunham.]

at a sale under a decree of foreclosure, for the amount of the two debts, and being unable to make the cash payment to the guardian, it was thereupon agreed between them and a third person, who was indebted to the administrator for other moneys loaned, and who did business with a mercantile house of which the guardian was a partner, that the administrator should credit the debtor with the amount, the debtor give his note, secured by crop-lien and mortgage, to the guardian's mercantile firm, and the guardian debit himself with the amount, in account with the ward, as for money collected; this agreement being executed, and founded on valuable consideration as between the several parties, operated a discharge and satisfaction of each of the original debts, although no money passed between them.

4.  *Misapplication of trust funds by trustee; notice to person dealing with him.*—When trust funds are misapplied by a trustee, the person dealing with him having knowledge of the character of the funds, the latter can assert no rights under the transaction, as against the beneficiaries of the trust; and if he also was acting in a fiduciary character, as guardian for an infant ward, his ward is also chargeable with notice, and can claim no benefit under the transaction, nor enforce it against the beneficiaries of the trust.

5.  *Computation by interest, when partial payments are made.*—Whether the statutory rule as to the computation of interest, when partial payments are made (Code, § 2091), "can be applied when one person is entitled to the principal and another to the interest, admits of grave doubt."

6.  *Liens on lands in hands of receiver; rents and profits collected by him.*—When liens charged on lands are sought to be enforced in equity, and, as a means of making the security available and sufficient, the lands are placed in the hands of a receiver, the rents and profits realized become a primary fund, and must be first applied to the extinguishment of the liens, in the order of their precedence; and these being insufficient, the proceeds of the sale of the lands are to be applied in the same way, until the liens are extinguished and the costs paid, or until the fund is exhausted.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 2d January, 1878, by Mrs. Anne E. Milhous, the wife (and formerly the ward) of Frank L. Milhous, against Mrs. Sallie Blackwell; and sought to foreclose a mortgage on a tract of land, called the "Davis land," which was given to secure the payment of two notes therein particularly described, each dated March 22d 1872, and payable on the 1st January, 1872, and 1873, respectively, to the complainant. The facts relating to the transaction of which the mortgage and notes formed a part, are stated in the opinion of the court, and need not be repeated here. Mrs. Blackwell stated these facts in her answer, and admitted the execution of the notes and mortgage; but she alleged that she had no real interest in the litigation, and insisted that her two daughters, Mrs. Texana Weeden, the wife of Henry V. Weeden, and Mrs. Willie P. Dunham, as the administratrix *de bonis non* of the estate of W. P. Dunham, deceased, should be brought in as the real parties in adverse interest to the complainant. Mrs. Weeden, as administratrix, was afterwards

[Milhous v. Dunham.]

made a defendant, and filed an answer and cross-bill, insisting that the transaction in which the notes and mortgage originated was a violation of trust and duty on the part of H. V. Weeden, who was at the time the administrator of Dunham's estate, of which complainant and her guardian had notice, and in which they participated; and she prayed that the notes and mortgage might be set aside, the sale at which Mrs. Blackwell became the purchaser also be set aside, the lands be sold under the decree of the court, the trust funds employed in the purchase first paid out of the proceeds of sale, and for other relief. On final hearing, on pleadings and proof, the chancellor dismissed the cross-bill, and rendered a decree of foreclosure under the original bill; but his decree was reversed by this court on appeal, and the cause was remanded, as shown by the former report of the case.—*Dunham v. Milhous,* 70 Ala. 596.

After the remandment of the cause, the complainant filed an amended bill, in which she alleged, among other things, that in March, 1872, being then an infant seventeen years of age, she was brought from Mobile, where she was at school, to visit her relatives in Selma, and was there informed by F. L. Milhous, her guardian, that a decree had been rendered in her favor by the Chancery Court, under which the Davis land had been sold, Mrs. Blackwell becoming the purchaser; that Mrs. Blackwell was unable to pay the agreed purchase-money, but had promised to pay $2,000, and to give her notes and a mortgage on the lands for the residue; that he had no authority to act for her in the premises, as her disabilities of infancy had been removed by a special legislative act, and he was no longer her guardian; that he would pay her the $2,000, if she accepted the proposed arrangement of Mrs. Blackwell, as he advised her to do, and that the mortgage on the land would be ample security for the residue of the price. The amended bill alleged, also, that these representations were made by said F. L. Milhous in the presence of Mrs. Blackwell and Mrs. Weeden, and were believed by complainant to be true, as she had confidence in the said parties; that she was entirely ignorant of business matters, and never before heard of the decree in her favor, and did not know that any other person had or claimed any interest in the lands, and knew nothing of legal forms or proceedings; that she relied implicitly on the statements thus made to her, and thereupon signed her name to a paper which acknowledged satisfaction of the decree in her favor, and instructed the register so to report to the court, and Mrs. Blackwell then signed and delivered the notes and mortgage; that these papers had all been prepared in advance of her arrival, and she had no knowledge of the facts or circumstances except as then communicated to her; that she had never heard of any indebted-

ness by Hill, nor of any arrangement made between him and Milhous as to the payment of the $2,000, and never authorized such arrangement before or afterwards, but relied entirely upon the promise of Milhous to pay it. Mrs. Blackwell, Mrs. Texana Weeden, W. C. Ward as her trustee, H. V. Weeden, and Mrs. Willie P. Dunham, both personally and as administratrix, were made defendants to the amended bill; and the prayer was, that an account be taken of the debt due to the complainant, and the lands be sold for its satisfaction; also, that accounts be taken of the Davis and Hill debts, and of the interest accrued thereon, and of any payments made by Hill to Milhous, and of the rents and profits of the lands, &c.

Answers to the amended bill were filed by the several defendants, alleging, in substance, that F. L. Milhous, while he was the complainant's guardian, had full knowledge of the trusts created by Dunham, and of the breach of trust committed by Weeden as administrator and trustee, and actively participated in such breach of trust; that the complainant herself was chargeable with notice, and was estopped from denying notice, having ratified the transaction after the removal of her disabilities, and received the benefit of the $2,000 in settlement with her guardian. The cross-bill of Mrs. Dunham was also amended, by bringing in all the parties in interest, adding other allegations, and praying appropriate relief.

On final hearing, on pleadings and proof, the chancellor held that the amended pleadings, and the additional testimony introduced, did not vary the case as decided by this court on the former appeal, and therefore rendered a decree, declaring that the complainant in the original bill, and the complainant in the cross-bill, were each entitled to relief, and ordering a sale of the lands by the register; and further declaring that the amount due the trust estate of Dunham was $5,880, and the amount due the complainant was $8,953.43, he directed the register, after paying the costs, and retaining a sum to cover commissions, solicitor's fees, &c., to set apart the sum of $5,880 out of the proceeds of sale, to be held under the provisions of Dunham's will, and to pay the residue to the complainant, or so much thereof as would satisfy her debt.

The complainant appeals from this decree, and assigns as error—1st, that the court erred in holding that the transaction between Weeden and Milhous, touching the Davis lands, was a breach of the trusts created by Dunham's will; 2d, in holding that complainant was chargeable with notice of the alleged breach of trust, and was not entitled to protection as a *bona fide* purchaser without notice; 3d, in holding that the debt due the Dunham estate was part of the *corpus* of the trust fund, and that it amounted to $5,880; 4th, in giving the claim of the

[Millhous v. Dunham.]

Dunham estate, or any part thereof, preference or priority over the debt due to the complainant.

BROOKS & ROY, for the appellant.—1. The controversy is as to the rights and liens of two trust estates, in and upon the same lands; one estate represented by an administrator and testamentary trustee, and the other by the guardian of an infant. It is manifest that the trusts, in themselves, are of equal right and dignity, and equally entitled to protection; but the transaction brought to view was wholly at the instance, and for the benefit of the parties interested in the Dunham estate, who were adults and represented by an experienced lawyer; while it was clearly against the interest of the complainant, then an infant, whose debt was amply secured by her decree against the land in controversy; whose disabilities of infancy were removed at the instance of the parties in adverse interest, her nearest relatives, in order to accomplish their own purposes; who yielded to their solicitations and representations, having nothing to gain, but every thing to lose, and gave a formal assent to proceedings and documents, in profound ignorance of their meaning and effect; and whose estate will be almost ruined, if the chancellor's decree is allowed to stand.

2. There was no breach of trust by Weeden, in the use of the trust funds in the purchase of the Davis lands; but the transaction must be regarded as an investment, which he had authority to make. Dunham's will provides that surplus income shall be invested in good stocks, or in loans secured by mortgage, but without words of exclusion, and prescribes nothing as to the investment of *corpus*. If the money used was *corpus*, it was in the trustee's hands without specific directions as to its management or investment; and he was only bound to act with good faith and sound discretion.—Perry on Trusts, § 452; *Huckabee v. Billingsly*, 16 Ala. 418; *McBrayer v. Cariker*, 64 Ala. 50; *Lyon v. Foscue*, 60 Ala. 480. As statutory trustee of his wife's estate, the husband may invest the *corpus* in lands, paying part only of the purchase-money, and executing with his wife a mortgage on the lands for the residue; and the validity of the transaction is not affected by a subsequent loss of any part of the moneys.—53 Ala. 499; 56 Ala. 456; 57 Ala. 29, 172, 502. There is no complaint as to the original investment in the said Davis lands, and there would have been no complaint as to the $2,000 of the money arising from the Hill loan, if the transaction had been completed, by which a homestead would have been provided for one of the beneficiaries. The intention of the trustee to commit a breach of trust, by finally lodging the title in Mrs. Weeden instead of the trustee, being unexecuted, can not affect the validity of the transaction

[Milhous v. Dunham.]

so far as it was effectuated, nor enable the parties at fault to re-
scind, to the prejudice of an innocent third person, who did not
participate in that unlawful purpose.

3. If there was a violation of trust on the part of Weeden,
the trustee, for which the beneficiaries might hold him responsi-
ble, the complainant's guardian had no notice of that breach of
trust, and was in no way privy to it. Dunham died in 1848,
and this transaction occurred in 1872, twenty-four years after-
wards. If Milhous had ever heard of the provisions of Dun-
ham's will, which is nowhere shown, he might fairly presume
that they had been fully complied with, and might honestly
rely on the statements and conduct of the parties, in treating
the fund and speaking of it as part of Mrs. Weeden's distribu-
tive share of her father's estate. He only sought in good faith
to protect the interests of his ward, as his duty required, and
could acquire no benefit to her or to himself by the transaction.

4. If Milhous be held chargeable with notice, actual or con-
structive, of the trust and its alleged violation, his knowledge
can not be imputed to the complainant as notice. Her connec-
tion with the transaction began and ended with her signature
to the papers on the 22d March, 1872, which she gave in utter
ignorance of their meaning and legal effect, and of all the facts
now charged as a breach of trust. If she had then been fully
informed of all the facts, although she could not have under-
stood their effect, she might be chargeable with legal notice,
her disabilities of infancy having been removed, but no effort
was made to inform her. She had never heard of the existence
of the Hill debt, and knew nothing of the arrangement between
Hill and her guardian. Her guardian promised to pay her the
$2,000, and she agreed to accept his personal liability; and he
afterwards charged himself with the amount, on settlement of
his accounts. He then had no right to act for her, and any sub-
sequent dealings between him and Hill were *res inter alios* as
to her. His arrangement with Hill was a·breach of trust on
his part, for which he was liable personally to her; and yet the
effort is now made to charge her with acquiescence in his illegal
act, on the ground that, having accepted payment from him on
settlement of his accounts, she thereby reaped the benefit of his
illegal act. What else could she have done, if, having knowl-
edge of all the facts, she intended to repudiate the transaction?

5. Of the moneys arising from the Hill debt, only $2,000
was invested in the Davis lands, on which $3,880 has accrued
as interest, and belongs to Mrs. Weeden individually; yet the
chancellor gives the whole amount ($5,880) precedence over
the complainant. This $2,000, moreover, was but accrued in-
terest on the Hill debt, as appears by a simple arithmetical
calculation (Code, § 2091), and constituted no part of the *corpus.*

W. R. Nelson, and E. W. Pettus, *contra*, relied on the opinion of this court on the former appeal.

STONE, C. J.—When this case was before us at a former term—*Dunham v. Milhous*, 70 Ala. 596—we laid down certain rules from which we have no wish to depart, unless the facts are so changed as to require the application of different principles. The bill, it will be seen by reference to the report of the former decision, was filed by Mrs. Milhous, to foreclose a mortgage on real estate, executed by Mrs. Blackwell. The mortgage was executed to secure the payment of certain notes, being the credit installments promised in the purchase of the lands the bill seeks to have sold. We declared, that certain trust funds of the estate of W. P. Dunham, deceased, had become invested in the lands in controversy, and that under the will of said Dunham, his daughters, Mrs. Texana Weeden and Miss Willie P. Dunham, had only a life interest in said· fund secured to their sole and separate use, with remainder in default of issue to the survivor during life, and remainder in absolute right to a person or persons not yet ascertained. The facts may be briefly summarized as follows : Dunham, having a good estate, directed that from the income and profits his children should be maintained and educated ; any surplus of income and profits to be invested, and the interest accruing therefrom, together with the income and profits of the residue of his estate beyond his widow's share, to be paid equally to his daughters, to their sole and separate use, during life, remainder to their several children, if any—if none, to the survivor during life—and then to their next of kin. Neither daughter has had issue, and it can not now be known who will take in ultimate remainder. It will thus be seen, that the *corpus* of the estate left by Mr. Dunham, and the principal of the fund, surplus of the profits, that should be invested under the will, was placed beyond the power of the daughters to consume, or dispose of, and that the same was to be preserved for those in remainder. The executors, or such of them as might act, and the administrator with the will annexed, were made trustees to administer the fund.

Pending the administration of the trust, and before the children attained to lawful age, to-wit, about the year 1860, the trustee loaned to one Hill eleven thousand dollars, secured by mortgage on real estate. He also loaned to one Davis two thousand dollars of the same fund, secured by mortgage on the lands in controversy in this suit. The guardian of Anne E. Milhous, complainant in this suit, also loaned to Davis three thousand dollars of his ward's money ; and the mortgage made to secure the Dunham loan, equally secured the Milhous loan. In a suit instituted for the purpose of subjecting the Davis lands

to the payment of a junior mortgage, a decree was rendered, ordering their sale, and directing the application of the proceeds *pro rata* to the Dunham and Milhous debts. The sale was made in November, 1871, and H. V. Weeden bid off the lands at the sum of the two decrees, less a small payment derived from other sources. He caused Mrs. Sallie Blackwell, his mother-in-law—the widow of Mr. Dunham—to be set down as the purchaser. The purchase was in fact made for the benefit of Texana Weeden, *nee* Dunham, who had become the wife of H. V. Weeden. H. V. Weeden was then the administrator with the will annexed of the Dunham estate; but Mrs. Weeden had chosen for himself another trustee, under the powers conferred by the will.

When this case was formerly before us, we held that the two loans to Hill and Davis came under the operation of Mr. Dunham's will, and were subject to the trusts therein created. That trust, as we have shown, was, that only the income, or usufruct, was payable to Mr. Dunham's daughters, the primary beneficiaries, during their lifes; the *corpus*, or principal, was reserved for those in remainder. Now, although these debts for money borrowed were secured by mortgages on real estate executed by Hill and Davis, the loans were not investments in real estate. The trustee or trustees had no authority to invest in real estate. Their authority under the will was limited to investments in "good stocks," or loans "secured amply by good bond and mortgage." These claims were only personalty, as we said on the former appeal. Being only *choses* in action representing money, the trustee had no authority to turn over the *corpus*, or principal, to the life-tenants. The principal should have been preserved, and only the interest paid over.—*Mason v. Pate*, 34 Ala. 379. H. V. Weeden was administrator of the estate, clothed with the powers of the will, and on him was cast the duty of preserving the principal of these funds.

Before the negotiation was entered upon, which led to the agreement the present suit seeks to enforce, there had been an agreed division of what is known as the Hill debt, or loan, between the two sisters, Texana and Willie P. The debt, with accrued interest, had then reached sixteen or eighteen thousand dollars. The one half which Willie P. Dunham was allowed to control, she either collected, or traded to Hill, the mortgagor. This was sanctioned and approved by H. V. Weeden, the administrator; for, on the 21st day of January, 1871, he renewed and extended the Hill liability, by accepting the three notes of Hill, Jr., in the aggregate sum of eight thousand dollars, due severally at one, two, and three years, with interest from date, secured by mortgage on the same lands which had been conveyed as security of the original debt. By force of this arrange-

ment, the Hill debt which remained subject to the control of Weeden, the administrator and trustee, was reduced to eight thousand dollars.

Before the register's sale of the Davis lands — November, 1871—there was an agreement between Weeden and the guardian of Miss Milhous, that he, Weeden, would purchase the lands at the gross sum of the two decrees; that he would pay two thousand dollars of Miss Milhous' claims, and secure the residue of her decree by a mortgage on the lands. Weeden desired to have the purchase made in the name of his wife Texana; but Milhous, the guardian, objected to having the title put in a married woman. Thereupon, Mrs. Blackwell, her mother, was substituted as the purchaser, she acting in the premises as the mere conduit of the title to Texana, for whom the lands were bought. Weeden's reliance to meet the two thousand dollars cash payment, was on the first note of Hill, then soon to mature. Hill, however, could not meet his note, and Weeden could not pay the money. Milhous, the guardian, was a commission-merchant in Mobile, and Hill was one of his patrons. It was thereupon agreed between the three, Hill, Weeden and Milhous, as follows: That Weeden would enter a credit of two thousand dollars on the note of Hill first due, and in consideration thereof Hill was to execute to Milhous his note for said sum, with interest, due November 1st, 1872, and sesure it by crop-lien and mortgage on the crop to be grown by him, Hill, during the year 1872. This arrangement Milhous was to treat as payment of the two thousand dollars cash payment on the Weeden-Blackwell purchase, and to look alone to Hill for its payment. It was carried into effect January 10th, 1872. On that day, Weeden entered the credit of two thousand dollars on the note of Hill, leaving the unpaid balance from him six thousand dollars, with some interest. On the same day Hill executed to the firm of commission-merchants, of which Milhous was a partner, his note and crop-lien and mortgage, as agreed on ; and Milhous debited himself with the two thousand dollars, as received on the Davis mortgage for the benefit of his ward. Now, although no money changed hands on that occasion, its legal and binding effect were the same as if Hill had paid Weeden, and Weeden had paid the money to Milhous. Each step in the transaction was based on a valuable consideration of benefit received, or liability incurred. Weeden's claim on Hill was reduced two thousand dollars, in consideration that Hill had procured Milhous to allow Weeden a credit for that sum. Hill's promise to Milhous was binding, because, in consequence of it, Milhous had procured his discharge from two thousand dollars of the debt he owed to Weeden. Weeden was discharged from the cash payment

promised to Milhous, guardian, because he, Weeden, in consideration that Milhous would regard the money as collected, and look to Hill for repayment, had discharged Hill from so much of the debt due from him. Milhous was bound to account to his ward for so much money received, because, on a valuable consideration, to-wit, Hill's note and crop-lien, he had discharged Weeden, or Mrs. Blackwell, from the payment of that sum, which belonged to his ward. The failure of Hill to pay the two thousand dollars to Milhous, if fail he did, could not in the least impair the conclusive force of this transaction, between any of the parties, except themselves. Between all the other parties the contract was executed.

In the opinion rendered on the former appeal, we charged Miss Milhous with notice that the two thousand dollars, cash payment in the Weeden-Blackwell purchase, was trust funds, because her guardian had knowledge of it, being a party to the arrangement. It is now contended, that this principle should not apply in this case, because the guardian had ceased to be such before the arrangement was consummated. The precise form the argument takes, is this : · On the 24th of January, 1872, Miss Milhous was relieved of the disabilities of minority by act of the legislature. After that, she entered satisfaction of the decree in her favor, on the Davis· mortgage. The contention is, that the money did not come to her till then, and therefore, notice to her former guardian was not sufficient, but should have been traced to her. We do not so understand the record. The payment to Milhous, the guardian, as we have shown, was made January 10th, 1872, while he was confessedly the guardian. The testimony shows he allowed himself to be charged with it in his settlement, and the testimony of Miss Milhous herself shows that, in this, her first business transaction, her signature to the paper was almost, if not quite, perfunctory.

It is also contended that, inasmuch as the two thousand dollars paid by Hill was only a partial payment, this, under the statute, must be first applied to the extinguishment of the accrued interest ; and a calculation is submitted, on which it is claimed that the entire *corpus*, or principal of the debt, was left in the hands of Hill, the mortgage debtor. On this hypothesis, it is contended that only the usufruct, and no part of the *corpus* of the trust fund, has gone into the purchase of the Davis tract. The statute invoked—Code of 1876, § 2091—has reference to the computation of interest, when there have been partial payments. It declares a rule of computation, as. between debtor and creditor. It admits of grave doubt, whether that rule can be applied, when one person is entitled to the principal, and another to the interest, and there is realized only a partial satisfaction. But we need not decide this question. The principal,

[Milhous v. Dunham.]

or *corpus*, which was lent to Hill, was eleven thousand dollars. This entire sum it was the duty of Weeden, administrator and trustee, to preserve for those in remainder. He had permitted the fund to be drawn out, until there remained only eight thousand dollars. This was entirely *corpus*. If he had permitted Willie P. to use more than her share, being one half of the accrued interest, that was a breach of trust, of which his wife, Texana, might complain. It afforded no justification for further encroachment on the *corpus*, already reduced below the true sum.

It is further contended for appellant, that even if the above rules of law be correctly laid down, there is a failure of proof in this record, that Frank L. Milhous, the guardian of Miss Milhous, at the time he made the tripartite agreement, knew the source from which the fund was derived.

The Davis mortgage, securing alike the Dunham and Milhous debts, showed on its face that the claim which Weeden asserted, and was seeking to collect, was the property of the Dunham estate ; and Weeden was claiming the right to recover it, solely on the title he had as administrator. Milhous, as guardian, was necessarily a party to the litigation, and aiding in its conduct. The proof shows that he had the entire direction of the litigation, so far as the interests of Miss Milhous were concerned. The mortgage being made to the administrator of Dunham, as such, and to the guardian of Miss Milhous, as such, and the rights of each arising out of the same instrument, and asserted in the same suit, this was as much notice to Milhous that the Weeden claim belonged to the Dunham estate, as it was that the claim he was asserting belonged to his ward. Each was a trust fund, and each was asserted as such. So, the papers from Hill to Weeden showed on their face that they were given to secure a debt to the Dunham estate. The testimony of Mr. Ward, strongly corroborated by Mrs. Blackwell and other witnesses, proves fully that Milhous knew the two thousand dollar cash payment was to, and did come from the Hill debt to the Dunham estate. In fact he was party to the entire arrangement by which two thousand dollars of the Dunham trust fund, secured by the Hill mortgage, was applied by Weeden in part purchase of the Davis land, and came to his hands for his then ward, Miss Milhous. This, we have shown, was done and completed on the 10th day of January, 1872, before Miss Milhous was relieved of the disabilities of minority. It is thus shown that, as to both the trust funds—the two thousand dollars principal due from Davis, and the two thousand dollars collected on the Hill debt,—Milhous knew the sources from which they came, and that they were of the estate of W. P. Dunham, of which Weeden was the administrator. They were being used,

as Milhous knew, not for purposes of the trust, but for personal purposes outside of the trust. Knowing they were trust funds, so attempted to be used, this was enough to put him on inquiry, which, if instituted and followed up, would have led to the discovery that the trustee had no power to employ for his own use the *corpus*, or principal of the trust fund, but that he must preserve it for those in remainder.—Perry on Trusts, §§ 810, 814, 836, 840; *Preston v. McMillan*, 58 Ala. 84; *Lee v. Lee*, 67 Ala. 406; *Johnson v. Thweatt*, 18 Ala. 74; *Dudley v. Witter*, 46 Ala. 664.

We are asked to sanction the employment of the four thousand dollars, *corpus* of the trust fund, in the purchase of these lands, as an investment for all parties concerned. There are many reasons why we can not do so. We mention a few. First, there are no pleadings, and could be none in this suit, which would raise the inquiry of the suitableness of such investment. Second, it is not shown that the purchase itself is such as the court could sanction. Third, other funds entered into the purchase, and a division or partition would become necessary, when the interests in remainder shall come to be asserted. We find nothing to induce us to change our views, as announced on the former appeal.

We have above ascertained that the sum of four thousand dollars, *corpus* of the Dunham trust-fund, has been invested in the Davis tract of land. Of this sum, two thousand dollars were obtained from the Hill loan, and the remaining two thousand from the loan to Davis. The money from the Hill loan is a primary charge. The Davis loan is a charge, only in common with, and equal to, the proportion the Dunham estate debt bears to the Milhous debt.

At an early stage of this suit, the Davis tract of land was placed in the hands of a receiver, and rents have accrued therefrom, the amount of which is not shown in this record. A settlement of the receiver's accounts will disclose the sum. There are three lien liabilities, each resting on the land, and each created before this suit was brought. It is a rule of universal application, that when liens charged on land are sought to be enforced in chancery, and, as a means of making the security available and sufficient, such lands are placed in the hands of a receiver, the rents and profits realized become a primary fund, and must be first applied to the extinguishment of the liens, in the order of their precedence.—*Powell v. Williams*, 14 Ala. 476; *Roulhac v. Jones*, at present term. And next to such rents and profits must be applied the proceeds of the sale of the lands, until the entire lien debts, and the costs taxed against the fund, are paid, or until the proceeds are exhausted. In ordering the sale of the lands, and disbursement of the proceeds, *infra*, it is

done with the condition and direction that the rents and profits be first applied, as part of the product of this suit.

The chancellor erred in his final decree, and there must be a reversal. The lands should have been, and now are decreed to be sold, alike under the prayer of the original bill, and the cross-bill of Willie P. Dunham. Of the sum of the rents and profits, and of the proceeds, after paying the costs of this suit, hereby decreed against the fund, and the costs of selling and conveying, there will be first set apart the sum of two thousand dollars, to replace that much of the Hill indebtedness, improperly invested in the land. Next, there will be set apart two thousand dollars, the principal sum of the Dunham fund lent to Davis, if the land yield enough to pay the principal sums loaned of both the Dunham and Milhous funds. If it does not yield enough to pay the principal of these two loans in full, then the fund will be divided *pro rata* between them, and only such portion as falls to the Dunham estate will be passed to the trust fund. The other portion, after *pro-rata* division, will belong to Mrs. Milhous. Should the lands yield more than enough to replace the two thousand dollars of the Hill fund misapplied, and the principal sums lent to Davis of the Dunham and Milhous trusts, then such surplus is decreed to Mrs. Anne E. Milhous, to the extent of her mortgage claim.

Other questions will arise; notably, the claim of solicitors for services in protecting the Dunham trust fund in this suit. We leave this for decision by the chancellor, on petition to be filed for the purpose.

When the sum of the trust fund of the Dunham estate is separated and ascertained, it must, under the direction of the chancellor, be securely placed, where it will be at once safe and productive; safe, that those in remainder may receive the principal, when their rights accrue; productive, that Mrs. Milhous may enjoy the income to the extent of her mortgage claim, to which she is entitled during the continuance of the life estates each of Texana Weeden and Willie P. Dunham. Let the costs of appeal in the court below, and in this court, be paid by Willie P. Dunham, out of the trust fund of the Dunham estate.

Reversed, rendered, and remanded.