# Wolffe *v.* The State.

*Attachment by the State.*

1. *Action by State; instructions of governor to attorney-general.*—When an attachment is sued out in the name of the State, by the attorney-general, it is not necessary that he should exhibit the written instructions of the governor for the institution of the suit (Code, § 2902); if such instructions were not in fact given, the objection should be taken by motion to dissolve the attachment, before joining issue.

2. *Count construed as in assumpsit, and not in case.*—In an action brought by the State, against a person alleged to be indebted to it, a special count averring that a large sum of money was deposited in bank by a tax-collector to the credit of the State treasurer, and was used by the treasurer in the purchase of a check on New York, payable to himself as treasurer; that this check was indorsed by him to the defendant, to whom he was indebted on account of private transactions in the purchase and sale of cotton, and who knew that the same belonged to the State, and was applied by the defendant as a payment on said private indebtedness; and that neither the defendant nor the treasurer had ever paid the money over to the State, but it was due and unpaid, is in *assumpsit*, and not in case.

3. *State's right to money deposited in bank by tax-collector, to credit of treasurer.*—Although the tax-collector may have no authority to deposit in bank, to the credit of the State treasurer, moneys collected by him as State taxes; yet, if he does so deposit it, and the money is drawn or checked out by the treasurer, it becomes the money of the State in his hands, as much so as if it had been remitted by private hand.

| | |
|---|---|
| 79 | 201 |
| 94 | 474 |
| 79 | 201 |
| 105 | 192 |
| 79 | 201 |
| 126 | 486 |
| 79 | 201 |
| 140 | 348 |

[Wolffe v. The State.]

4. *Action against person receiving public moneys with notice of their character.*—Money being deposited in bank by a tax-collector, to the credit of "*I. H. Vincent, treasurer,*" and checked out by him in the purchase of exchange on New York, the draft being made payable to himself as treasurer, and indorsed in the same way; these facts are sufficient to charge the indorsee with notice of the official character in which the treasurer held the funds, and if he applies the money in payment of an individual indebtedness of the treasurer to him, he becomes liable to the State, as a trustee *in invitum*, in an action for money had and received.

5. *Same; ratification of unauthorized act.*— The institution of such action in the name of the State, by the direction of the governor, does not amount to a ratification of the illegal act, nor discharge the liability of the treasurer himself; nor is any special legislative sanction necessary to authorize or sustain the action.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES E. COBB.

This action was commenced on the 3d February, 1883, by an original attachment, sued out in the name of the State, against Fred. Wolffe. No affidavit was made, but, instead thereof, a written statement was filed with the clerk by the attorney-general, as follows: "Before me, E. R. Holt, clerk," &c., "personally appeared H. C. Tompkins, as the attorney-general of the State of Alabama, who is known to me, and who, as such attorney-general, says that Fred. Wolffe is justly indebted to the State of Alabama in the sum of $139,376.91, which sum is now due and unpaid; that said Wolffe resides out of the State of Alabama, and that this attachment is not sued out for the purpose of vexing or harassing said Wolffe; and further, that he, said Tompkins, as such attorney-general, has been instructed and required by the governor of the State of Alabama, in writing, to commence suit in the name of the said State against said Wolffe, by attachment, for the recovery of said sum of money, with interest thereon. Wherefore he prays that an attachment may issue," &c.

The original complaint contained only the common money counts, but, by leave of the court, a special count was added by amendment, as follows: "Plaintiff claims of defendant the further sum of twenty thousand dollars, for that whereas, heretofore, to-wit, on and prior to the 10th day of March, 1881, one Charles T. Pollard, as tax-collector of the county of Montgomery, State of Alabama, had collected for the State taxes amounting to the sum of, to-wit, forty thousand dollars, and had deposited the same in the Merchants & Planters' Bank of Montgomery, Alabama, to the credit of I. H. Vincent as the treasurer of said State, and said money so deposited was the money of the State; that said Vincent was then, and for some time prior thereto had been, the treasurer of said State; that at that time, and for some time prior thereto, said Vincent had

[Wolffe v. The State.]

been dealing largely with said defendant in buying and selling cotton for future delivery, on his (said Vincent's) private account ; that on, to-wit, said 10th day of March, 1881, said Vincent used, of the funds so deposited in said bank to his credit as State treasurer, and belonging to the State as aforesaid, a large sum, to-wit, twenty thousand and one hundred dollars, in the purchase of a certain draft drawn by said Merchants' & Planters' Bank, by Robert Goldthwaite, its cashier, on the Bank of New York National Banking Association, of the city and State of New York, for the sum of twenty thousand dollars, payable to the order of I. H. Vincent, State treasurer,— said words, *State treasurer*, being written on the face of said draft, immediately after the name of said Vincent, and which said draft was the property of said plaintiff ; that afterwards, to-wit, on the 10th day of March, 1881, said Vincent delivered said draft to said defendant, and at the same time indorsed it by writing on the back thereof, in substance as follows : '*Pay to the order of Fred. Wolffe,*' and signed said indorsement in substance as follows : '*I. H. Vincent, treasurer*;' that said draft was delivered to and received by said Wolffe in payment of money that had been theretofore, or which might be thereafter, paid out by said Wolffe for or on account of said Vincent in the purchase or sale of cotton for future delivery as aforesaid. And plaintiff avers that, long prior to, and on said 10th day of March, 1881, defendant well knew that said Vincent had been, and still continued to be, and then was the treasurer of the State of Alabama ; and plaintiff further avers that on, to-wit, said 10th day of March, 1881, said Wolffe indorsed said draft to E. K. Wright, cashier, or order ; and said indorsement by said Wolffe was in substance as follows : '*Pay to E. K. Wright, cashier, or order, for collection and credit for account of Fred. Wolffe, Montgomery, Alabama.*' And plaintiff avers that said E. K. Wright was then the cashier of the National Park Bank, in the city and State of New York ; and said draft was afterward, to-wit, on the 15th day of March, 1881, collected by said National Park Bank, for and on account of said Wolffe, from said Bank of New York National Banking Association. And plaintiff avers that neither said Vincent nor said Wolffe ever paid said sum of money to plaintiff, but that the same is still due and unpaid. Wherefore plaintiff sues," &c.

The defendant objected to the allowance of this amendment, and demurred to the complaint as amended, and also to the amended count. The grounds of demurrer to the entire complaint were, in substance, that the special count was in case, or *ex delicto*, while the original complaint was in *assumpsit*, and therefore there was a misjoinder of counts. The special grounds of demurrer to the amended count were : (1.) "The

facts alleged therein do not show that the defendant knowingly participated in any breach of trust, or that he received any money of the plaintiff on the draft therein mentioned, with knowledge at the time that such money or draft was the money or draft of the plaintiff at the time." (2.) "No such knowledge by the defendant as is essential to create or show a liability on his part to the plaintiff is alleged or stated in said count." (3.) Said special count is a departure from the original complaint. (4.) "Said special count does not aver or state knowledge on the part of the defendant of such facts as were and are essential to show a liability against him in favor of the plaintiff, and does not aver the existence of all the facts which were and are essential to entitle plaintiff to recover under that count." (5.) "The facts alleged in said count do not show that the money deposited by said Pollard was the money of the plaintiff after it was so deposited; nor do the facts alleged show that defendant received said draft, or any money which at the time belonged to the plaintiff, and which the defendant knew at the time belonged to the plaintiff." The court overruled the demurrer, and the defendant then pleaded the general issue; on which plea issue being joined, a trial was had, which resulted in a verdict and judgment for the plaintiff, for $20,000; and the property on which the attachment had been levied was condemned to the satisfaction of the judgment.

The errors assigned are, the allowance of the amendment, the overruling of the several demurrers, and the final judgment.

Rice & Wiley, for the appellant.—(1.) In ordinary attachment cases, an affidavit is required of the plaintiff, or person suing out the writ, to satisfy the conscience of the officer, and show that a state of facts exists which makes it his duty to issue this extraordinary process.— *Wright v. Smith,* 66 Ala. 546; Waples on Attachment, 154, 155. In suits by the State, an affidavit is dispensed with, and the direction of the governor, in writing, is substituted for it.—Code, § 2902. The written authority being the foundation of the action, the record must show its existence, and that it was exhibited to the officer who issued the writ; and not being produced and exhibited to him, nor any where set out in the record, the attachment is void. A plea in abatement, or motion to quash, on account of defects which render the process void, is not necessary.—*Reid & Co. v. McLeod,* 20 Ala. 576; *Cox v. Mangham,* 29 Ala. 81; *Hanson v. Dow,* 51 Maine, 165; *Fitzsimmons v. Howard,* 69 Ala. 590; Waples on Attachment, 24, 136, 321. (2.) The special count is in case, and can not be joined with the common counts. *Myers v. Gilbert,* 18 Ala. 467. (3.) But the special count,

whether in case or in assumpsit, is bad, and shows no cause of action in favor of the plaintiff. The money collected by Pollard, as taxes, belonged to the State, until it was deposited in bank by him to the credit of Vincent as treasurer, whereby its identity was lost and destroyed; and the money afterwards received by defendant was not the money of the State.—*Perley v. County of Muskegon*, 20 Amer. R. 637; *Br. Bank v. Sydnor*, 7 Ala. 308. If the money was wrongfully paid out by Vincent, and wrongfully received by Wolffe, the State might waive the tort, and maintain an action for money had and received; but this would amount to a ratification of the wrongful act, would discharge Vincent from liability, and would require express legislative sanction.— *VanDyke v. The State*, 24 Ala. 81; *The State v. Keim*, 8 Neb. 63; *Burback v. Fay*, 65 N. Y. 57; *Noyes v. The State*, 32 Amer. R. 712; *U. S. v. Smith*, 94 U. S. 217; *Railroad Co. v. Mississippi*, 102 U. S. 140; 13 How. 561; *Bank v. Gibson*, 6 Ala. 814.

THOS. N. MCCLELLAN, Attorney-General, with whom was E. W. PETTUS, *contra.*—(1.) The amended (or special) count is in assumpsit, and was properly allowed.— *Wilkinson v. Mosely*, 18 Ala. 288; *Insurance Co. v. Randall*, 74 Ala. 176; *Steed v. McIntyre*, 68 Ala. 408; *Mahan v. Smitherman*, 71 Ala. 563. (2.) The money collected by Pollard, as taxes, belonged to the State, while in his hands, and when deposited in bank to the credit of the treasurer; and its character was not changed, when drawn out on the warrant of the treasurer.—*Skinner v. Merchants' Bank*, 4 Allen, 290; *Rusk v. Newell*, 25 Ill. 225. The facts averred in the special count show knowledge by the defendant of the character of the money as belonging to the State, and the face of the draft was sufficient to charge him with notice.—*Brush v. Ware*, 15 Peters, 114; *Nat. Bank v. Insurance Co.*, 104 U. S. 54; *Shaw v. Spencer*, 100 Mass. 382; *Duncan v. Jordan*, 15 Wallace, 165; *Bodenheim v. Hoskyns*, 2 De G., M. & G. 903; *Pannell v. Hurley*, 2 Collyer, 241; 2 Ball & Beatty, 253; 14 Peters, 518; 31 Conn. 180; *Angle v. Insurance Co.*, 92 U. S. 330; 72 Ala. 585; 20 How. 365. (3.) The State may sue in its own name, and the written direction of the governor is sufficient authority for bringing the action.—Code, § 2902. Having the statutory right to direct the institution of a suit, he must have the implied right to select the form of action in any given case, else the authority would be unavailing. The statute has been enacted since the decision in the case of *VanDyke v. The State*, cited for appellant. But that case, it is submitted, is wrong in principle, and ought not to be extended.

STONE, C. J.—There is nothing in the objection, that the Attorney-General, when he sued out the attachment, did not exhibit the Governor's written direction that he should do so. Code of 1876, § 2902. Such direction is, at most, the Attorney-General's authority for bringing the suit; and if the direction was not given, the omission should be taken advantage of by motion to dissolve the attachment, made before joining issue.—*Jordan v. Hazard*, 10 Ala. 221; *VanDyke v. The State*, 24 Ala. 81.

Neither is there any thing in the alleged misjoinder of counts. Each count is clearly in assumpsit, the difference being that the count added by way of amendment is a special count, whereas the original complaint contained only common counts. *Mobile Life Ins. Co. v. Randall*, 74 Ala. 170.

The tax-collector of Montgomery county deposited the State tax-money in bank, to the credit of "I. H. Vincent, treasurer." Vincent was then treasurer of the State of Alabama. He checked out twenty thousand dollars of this money, and with it purchased exchange on New York—the draft made payable to the order of "I. H. Vincent, treasurer." Vincent indorsed the draft to Wolffe, signing the indorsement "I. H. Vincent, treasurer." Wolffe knew Vincent was treasurer of the State of Alabama. The draft was collected, and the proceeds placed by Wolffe to Vincent's credit, in payment of an individual indebtedness from the latter to the former. The present suit was brought to recover this, with other sums, from Wolffe; and there was verdict and judgment in favor of the State, for the twenty thousand dollars.

There can be no question, that the word "treasurer," appended to Vincent's name, both as payee and indorser of the draft, was notice enough to put Wolffe on inquiry, which, if prosecuted, would have led to the discovery that the money was not Vincent's, but belonged to the State of Alabama. *Brush v. Ware*, 15 Pet. 93–113; *Duncan v. Jordan*, 15 Wall. 165; *National Bank v. Insurance Co.*, 104 U. S. 54; *Shaw v. Spencer*, 100 Mass. 382; *Pannell v. Hurley*, 2 Coll. 241; *Bodenheim v. Hoskyns*, 2 De Gex, M. & Gordon, 903.

The question of real merit in this case is, whether the State can sue at law for the money, without a previous act of the legislature, ratifying a real or supposed tortious use of the money; or, to state it differently, whether there is any power, other than the legislature, which can waive the tort, and authorize a suit in assumpsit. The inquiry may well arise in this case, what tort is to be waived, or what illegal act to be ratified? We may concede that the tax-collector was without authority for placing the tax-money on deposit in bank, and the treasurer was under no obligation to call for it, or to receive it

from that depository. We may concede further, that until Vincent checked out the money, it remained the tax-collector's, and was subject to his risk. · What was its *status*, after Vincent obtained control of it, by checking it out of bank? Had it not then reached its . proper depositary and destination? Was it not then the money of the State, in the hands of the proper custodian, the State treasurer? Is the case different from what it would have been, if the money had been sent to the treasurer by a private hand—an irresponsible one, if you please?

The State has need, constantly recurring, of funds in the hands of its fiscal agent, to meet its semi-annual interest payable in New York. There is nothing suspicious, nor out of the usual routine, in the purchase of exchange by the State treasurer with State funds, even for larger amounts than twenty thousand dollars. The illegality is found, not in the receipt of the money by Vincent. He was entitled to it. Not in the purchase of exchange. He had authority to purchase it. It consisted alone in the application of the funds of the State, having the ear-mark of its ownership, to Vincent's individual uses. In this, both Vincent and Wolffe participated, actively and knowingly. The money was trust money in Vincent's hands —bore on its face the impress that it was trust money; Vincent held it as trustee, and by aiding him in its misapplication, Wolffe constituted himself trustee *in invitum*—co-trustee with Vincent, and liable to account for its misappropriation.—*Lee v. Lee*, 67 Ala. 406, and authorities cited, 423; *Milhous v. Dunham*, 78 Ala. 48; *National Bank v. Insurance Co.*, 104 U. S. 54; *Shaw v. Spencer*, 100 Mass. 382; *Skinner v. Merchants' Bank*, 4 Allen, 290; *Cobb v. Wanemaker*, 78 Penn. St. 501.

We again inquire, what act developed in this transaction is it necessary to ratify, or what tort to waive, in order to maintain this suit? This is not the case of an alleged change of the character of the thing claimed, such as the sale of a chattel, and conversion of it into money, or into some other chattel. In such case, there must be a ratification of the unauthorized sale, before the substituted money or article can be claimed ; and claiming the money validates the sale, and vests in the purchaser a title to the property converted.—*Butler v. O'Brien*, 5 Ala. 316 ; *Harrison v. Gardner*, 10 Ala. 185 ; *Williams v. Jones*, at present term. This requires ratification, which can only be done by competent authority. In this case, there has been no change of the character of the thing claimed. It was money at the beginning ; it is still money. Claiming it of Wolffe, is no abandonment of Vincent's liability, any more than suing B, for an alleged second conversion of a chattel previously converted by A, would be an abandonment of all

[Wolffe v. The State.]

claim against A. Each is liable to suit and judgment; and nothing less than satisfaction by one will discharge the other. *Beazley v. Mitchell*, 9 Ala. 780; *Spivey v. Morris*, 18 Ala. 254; *Bott v. McCoy*, 20 Ala. 578; *Hyde v. Noble*, 38 Amer. Dec. 508; *Sessions v. Johnson*, 95 U. S. 347; Wharton on Agency, § 72–2.

The present case is distinguishable from *Van Dyke v. State*, 24 Ala. 81. In that case, the money was paid to a person not authorized to receive it—a mere private agent of the depositors, so far as that service was concerned. The money never reached the hands of the treasurer, and therefore it never became the State's money. What was done did not discharge the tax-debtors, any more than a delivery of the money to any other faithless agent would have discharged them. Van Dyke, though not liable to the State, in the absence of ratification of the payment to him by competent authority, was nevertheless liable to the parties who deposited the money with him. In this case, when Vincent drew the money out of the bank, the tax-collector was *eo instanti* discharged, and at the same time Vincent and his sureties became bound to the State for its faithful administration.

The two cases of *Perley v. County of Muskegon*, 32 Mich. 132 (s. c., 20 Amer. Rep. 637), and *State v. Keim*, 8 Nebr. 63, are not reconcilable with our views, nor are they reconcilable with our former rulings. They ignore the principle, that an outsider, by aiding in the misapplication of trust funds, knowing them to be such, constitutes himself trustee, and must account as trustee.

The case is thus narrowed down to this: Wolffe obtained possession of twenty thousand dollars of the State's money, illegally, charged with knowledge that it was the money of the State, which Vincent had no authority to pay to him on private account. He received it illegally, and holds it tortiously.

There is no matter of account to be settled, for Wolffe could be entitled to no credits against it. The action of assumpsit-money had and received—will lie for its recovery.—1 Brick. Dig. 140, §§ 61, 72, 73; *Hitchcock v. Lukens*, 8 Por. 333; *Vincent v. Rogers*, 30 Ala. 471; s. c., 33 Ala. 224; *Finney v. Cochran*, 37 Amer. Dec. 450; s. c., 1 Watts & Serg. 112.

Affirmed.

CLOPTON, J., not sitting.